In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3494

SHAUNTE DOTSON,

*Plaintiff-Appellant,*

*v.*

JAIMIE BRAVO, OFFICER, STAR #4123,
and CITY OF CHICAGO,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7352—**W. Thomas Rosemond, Jr.**, *Magistrate Judge.*

ARGUED DECEMBER 9, 2002—DECIDED MARCH 3, 2003

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* "[T]here are species of miscon-duct that place too high a burden . . . for a court to allow a case to continue." *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). The Plaintiff, whose real name is DeMarco Shaunte Sheppard,[1] filed this civil rights lawsuit under the name "Shaunte Dotson" after being

---

[1] Because it is his real name, we will refer to the Plaintiff as "Sheppard" and not "Dotson" throughout this opinion. For all events prior to May 2002, however, Sheppard passed himself off as "Shaunte Dotson" to police, the courts, and the Illinois correctional system.

twice convicted and once acquitted of aggravated discharge of a firearm in the Illinois courts under the name "Shaunte Dotson." During discovery proceedings in this case, the Defendants ("Bravo" or "the City") learned of Sheppard's true identity and filed a motion to dismiss and to impose sanctions against him. The district court granted the motion to dismiss with prejudice. Sheppard appeals that ruling, and we affirm.

## BACKGROUND

Shortly after midnight on January 1, 1998, police responded to a call of shots fired in the 8500 block of South Saginaw in Chicago. While searching the area, Chicago Police Officer Jaimie Bravo proceeded down the gangway of the house adjacent to 8529 South Saginaw. The parties disagree as to what actually occurred next, but do not dispute that Bravo fired two shots into the backyard of 8529 South Saginaw, which struck Tamika Smith in the back of the leg. Bravo then proceeded into the backyard of 8529 South Saginaw, and by some accounts into the home itself, and arrested Sheppard, who identified himself as "Shaunte Dotson."[2]

Sheppard was charged with attempted first degree murder, aggravated discharge of a firearm at a police officer, and aggravated discharge of a firearm. Bravo testified at trial that Sheppard shot first on the night

---

[2] Bravo claims that Sheppard shot first and that Smith was caught in the cross-fire when Bravo returned fire. Sheppard and Smith, however, claim that Smith was alone in the backyard when Bravo opened fire and that Sheppard came out of the house only after Smith was shot in order to assist her. We need not resolve this factual dispute, noting that the district court elected not to resolve it, because it is not germane to our disposition of this case.

of January 1, 1998, and Sheppard was convicted only of aggravated discharge of a firearm at a police officer. A second trial took place following the discovery of exculpatory evidence not tendered to Sheppard's counsel during the first trial, and Bravo again gave unwavering testimony that Sheppard was the man who shot at him. Sheppard was convicted for a second time, but only of aggravated discharge of a firearm. He was then sentenced to four years' imprisonment and remanded to the Illinois correctional system.

Approximately one year after Sheppard was convicted the second time, Tamika Smith filed a § 1983 lawsuit against Bravo, alleging that she was alone and unarmed in the backyard when Bravo shot her. In March 2000, Sheppard gave a deposition in Smith's case from prison, at which time he continued to identify himself as "Shaunte Dotson," denied being known by any other name, and stated that his birthday was June 4, 1980; Sheppard's correct birthday is June 24, 1980. That same month, the City and Bravo turned over to Smith's attorneys audio tape recordings of police radio broadcasts from the early morning events on January 1, 1998. The tapes included a recording of a broadcast made at least half an hour after Bravo had arrested Sheppard at 8529 South Saginaw. During that broadcast, Bravo tells police units, responding to a call of shots fired a few blocks away on Marquette Street, that the shooter there may have been the person who shot at him on South Saginaw, contradicting his testimony in Sheppard's trials.

As a result of this recording, Sheppard was released immediately from prison and granted a third trial. Prior to the trial, Sheppard was arrested for threatening a security guard on August 23, 2000. This time, however, Sheppard gave police his real name. His third, criminal trial was held on November 16, 2000, and Sheppard was acquitted of all charges. All three of his criminal trials and his

incarceration took place under the assumption that his name was "Shaunte Dotson."

Following his acquittal, Sheppard filed the instant civil rights suit, as "Shaunte Dotson," against Bravo and the City alleging malicious prosecution and other state law claims. The City sought discovery from third parties for records on "Shaunte Dotson" but soon learned that none existed. In February 2001, the City sent interrogatories to Sheppard, which specifically requested, among other things, information about each of his arrests.

Before responding to those interrogatories, Sheppard was arrested again on March 2, 2001, for assault and battery as well as on April 29, 2001, for felony weapons possession, fleeing an officer, and traffic violations. As with his August 2000 arrest, Sheppard gave police his real name on these occasions. On May 1, 2001, Sheppard sent unverified answers to the City's interrogatories, but failed to disclose his real name or the fact that he had recently been arrested three times under the name DeMarco Sheppard. Bravo then filed a motion to compel verified responses, which the district court granted. On May 22, 2001, Sheppard finally provided verified answers and, for the first time, disclosed his true name. He did not, however, provide the requested information on his three recent arrests nor correct his date of birth, which he maintained was June 4, 1980.

Three days later, the City deposed Sheppard and verified his correct identity. Sheppard stated that he gave police the name "Shaunte Dotson" in January 1998 because he was afraid that outstanding warrants existed under the name DeMarco Sheppard. He also admitted that his correct birth date is June 24, 1980. Based upon this information, the City filed a motion to dismiss the case and impose sanctions, which the district court granted in part by dismissing the case with prejudice. Sheppard

now appeals, arguing that the district court abused its discretion. Specifically, Sheppard argues that the district court improperly considered his use of a false name prior to the filing of this lawsuit and that, in any event, the City and Bravo were not prejudiced by his use of a false name.

## ANALYSIS

We review the district court's imposition of sanctions for discovery violations, including dismissal of the case with prejudice, for an abuse of discretion. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam); *Godlove v. Bamberger, Forman, Oswald, and Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990). Factual findings of the district court, however, are reviewed for clear error. *Barnhill*, 11 F.3d at 1367 n.7.

It is appropriate to start our analysis with the Federal Rules of Civil Procedure and specifically with Rule 37, which address sanctions for discovery violations. Under Rule 37(a)(3), "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(3) (2002). Rule 37(c)(1) establishes that a failure to disclose any information that is required to be disclosed under Rule 26(a) and (e)(1) can result in the imposition of various sanctions, which are listed in Rule 37(b)(2)(A)-(C).[3] FED. R. CIV.

---

[3]  Rule 26(a) provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

(continued...)

P. 37(c)(1). Among the approved Rule 37(b) sanctions is "dismissing the action or proceeding or any part thereof." FED. R. CIV. P. 37(b)(2)(C); *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir. 1994).

We recognize that dismissal is a harsh sanction, but "the most severe in the spectrum of sanctions provided by statute or rule must be available . . . not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League*, 427 U.S. at 643. Further, it is axiomatic that the appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty—dismissal with prejudice. *Halas*, 16 F.3d at 165. We have held that incomplete or evasive responses to interrogatories can support, in part, dismissal of the entire action under Rule 37(b). *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1180 (7th Cir. 1987).

Beyond any rule-based justification, the court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations. *Chambers v.*

---

[3] (...continued)

Fed. R. Civ. P. 26(a)(1)(A) (2002). Adding to that requirement, Rule 26(e)(1) mandates that:

> [a] party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1). We find that disclosing the true name of a party would undoubtedly be required by both of these Rules.

*NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Barnhill*, 11 F.3d at 1367. This power is governed by the necessary control courts must have over their dockets. *Barnhill*, 11 F.3d at 1367. As with Rule 37(b) dismissals, use of the court's inherent power to dismiss for discovery violations is perceived as a "draconian" measure. *Id.* It should be employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing. In deciding what measure of sanctions to impose, the district court should consider "the egregiousness of the conduct in question *in relation to all aspects of the judicial process.*" *Id.* at 1368 (emphasis added).

We have also noted that,

> [m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court.

*Id.* Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action.[4]

---

[4]  We note that Rule 10(a) of the Federal Rules of Civil Procedure mandates that every pleading "shall include the names of all the parties." FED. R. CIV. P. 10(a) (2002). In rare instances will we allow parties to proceed under false names because the public has a right to know who is using the courts. *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Sheppard's failure to proceed under his true name is also a

(continued...)

The instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty is appropriate not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court. Sheppard's list of egregious conduct includes: 1) filing a federal civil rights claim under a false name; 2) serving unverified answers to interrogatories propounded by the City containing lies about his true identity, date of birth, and complete arrest record; 3) serving verified responses to the same interrogatories (following the issuance of a court order compelling such disclosure) that still did not disclose his correct birth date or arrest record; 4) lying under oath about his true name and birth date in a deposition in Tamika Smith's federal civil rights case; 5) lying about his true name to police when arrested on January 1, 1998, to avoid outstanding arrest warrants; and 6) continuing to conceal his true identity from state officials throughout the multi-year duration of his three state criminal trials and incarceration.

There can be no doubt that the scheme of deception Sheppard followed in prosecuting his federal civil rights case against the City and Officer Bravo warrants dismissal with prejudice under the Federal Rules of Civil Procedure. Sheppard first argues that it was not wrong to file the case under the "Dotson" name because all state criminal proceedings occurred under that name. The fact is that *his fraudulent conduct* produced such a result and does not justify continuance of the charade in federal court.

---

[4] (...continued)
violation of Rule 10(a). Sheppard argues futilely, lacking any support from this Circuit, that he has a right to use any name he wants. We are unpersuaded by the cases from other jurisdictions to which he cites and decline to adopt his argument.

Although Sheppard eventually (though reluctantly) disclosed his true identity and birth date, he never disclosed his full arrest record despite the court order and interrogatories served upon him. After Sheppard's release from prison in 2000, he was arrested three times as DeMarco Sheppard, the most recent arrest coming mere days before he submitted responses to the City's interrogatories. Even when the district court ordered that he supply verified responses, Sheppard choose not to fully disclose. Such conduct is a clear violation of the district court's May 6, 2001, discovery order. As a result, imposition of Rule 37(b) sanctions was not inappropriate.

Further, the district court's inherent authority to address such flagrant contempt justifies the court's decision. Sheppard's conduct in this case alone warrants dismissal; moreover his overall scheme to defraud "all aspects of the judicial process" deserves consideration because it provides the context for understanding the appropriateness of such a harsh sanction. *Barnhill*, 11 F.3d at 1368. We consider, as the district court properly did, that Sheppard defrauded not only a separate federal case via his deception in the Smith deposition, but also the state criminal justice system. Thrice over he was tried under the name of "Shaunte Dotson," twice convicted and once acquitted. At no point did he seek to rectify his lies or to ameliorate the situation; instead, he played the state system to his advantage. No rule prohibits our consideration of Sheppard's actions prior to the filing of the underlying lawsuit, and we will factor that behavior into our analysis.

Given the evidence that supported his acquittal from all criminal charges, we note that Sheppard's civil rights case may well have had some merit. But, we cannot allow a plaintiff to so abuse the court system in order to avoid criminal justice, yet obtain civil reward. If Sheppard sought to expose the "truth" of what occurred on

January 1, 1998, he should not have begun the lie that now leads to the dismissal of his case. The City and Bravo were prejudiced in their defense of this case, despite Sheppard's eventual truth telling.

Accordingly, we find that the district court did not abuse its discretion in dismissing Sheppard's case with prejudice. AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*