# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 04-2784 & 04-3863

ANGELITA GREVISKES,

*Plaintiff-Appellant,*

v.

UNIVERSITIES RESEARCH ASSOCIATION,
INCORPORATED, doing business as
FERMILAB and Fermilab NAL/URA,

*Defendants-Appellees.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 257—**Robert W. Gettleman**, *Judge.*

———————

ARGUED APRIL 12, 2005—DECIDED AUGUST 8, 2005

———————

Before MANION, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Angelita Greviskes filed a complaint against her former employer Universities Research Association, Inc. (URA) alleging that she was terminated from her job on the basis of national origin in violation of

Title VII of the Civil Rights Act of 1964.[1] The case, however, was never heard on the merits. On June 16, 2004, following briefing and an evidentiary hearing, the district court dismissed the case with prejudice because of Angelita Greviskes' blatant misconduct in the course of discovery and her attempts to obstruct justice. As an additional sanction, the district court awarded $54,613.50 in attorney's fees to URA. Angelita Greviskes appeals the district court's dismissal and monetary sanction. We affirm the district court in all respects and additionally give notice of our intent to award reasonable attorney's fees to URA on appeal.

I.

Angelita Greviskes filed suit against URA on January 13, 2003. In the course of discovery, a protective order was entered governing disclosure of items URA marked as "Confidential." Among the documents produced, URA sent to Angelita Greviskes the personnel records of her former supervisor, Terry Erickson, containing Erickson's social security number, employee number, and signature, but failed to mark the file "Confidential." John Dore, Angelita Greviskes' attorney, gave copies of the Erickson files to her attorney husband Paul Greviskes, who was counsel for a companion state court lawsuit. Angelita Greviskes also sought Erickson's payroll records to prove that she was treated more harshly than Erickson, but URA objected and the documents were not produced.

On November 24 and 25, 2003, the payroll department at URA received faxes ostensibly from Erickson containing her

---

[1] We will refer to the plaintiff Angelita Greviskes and to her husband Paul Greviskes by their full names throughout to avoid confusion.

social security number, employee number, and "signature" requesting her own payroll records. The faxes requested that the record department send copies of monthly time sheets to Rothchild and Dore, c/o P.O. Box 393, Batavia, IL 60510, or fax the records to 630-879-8390. The address and fax number noted on the requests were those of Paul Greviskes' law office. The number at the top of the fax (630-585-8022), which identifies the machine from which it was sent, belonged to Greviskes Builders, a company that had been owned by Donald Greviskes, Paul Greviskes' recently deceased brother. Paul Greviskes was the administrator of his brother's estate. Furthermore, the number from which the faxes were transmitted, 630-896-6856, was the second telephone line in the home of Angelita and Paul Greviskes at the time of transmittal.

Although the faxes specified that Erickson would be out of the office for the week, a payroll employee overlooked this fact and called Erickson to let her know that the records could not be produced by November 30, as the faxes had requested. During the telephone conversation, Erickson revealed that she had no knowledge of or involvement in the faxes the department received requesting her payroll records. The matter was then brought to the attention of David Gassman, defendant's in-house counsel, who contacted John Dore and Paul Greviskes by letter on December 1, 2003, asking them about their involvement in the fraudulent faxes and apparent forgeries. Paul Greviskes did not respond at all and Dore left an angry telephone message denying any involvement. URA again attempted to contact Dore and Paul Greviskes on December 11, 2003, giving them an opportunity to explain Angelita Greviskes' involvement in the faxes and also enclosing a draft of a motion to dismiss that would be submitted to the district court. Dore and Paul Greviskes did not respond and URA filed its motion to dismiss on December 16, 2003, asking that the

district court dismiss the claim against URA with prejudice and requesting the district court to grant whatever relief it deemed appropriate.

The motion to dismiss was based on an alleged violation of the protective order as well as "the inherent power of the court to protect its integrity and punish litigants for gross misconduct." *Greviskes v. Universities Research Ass'n*, 226 F.R.D. 595, 596 (N.D. Ill. 2004). Dore responded to the motion by arguing that the protective order had not been violated because URA had not marked the Erickson file as "Confidential", that URA should have produced the monthly time sheets, and that his client's conduct was not sufficient to justify sanctions pursuant to the inherent authority of the district court. The response did not deny the facts put forth in URA's motion to dismiss.

Because of the serious nature of the allegations, the district court allowed the parties to take discovery on the motion to dismiss. On December 24, 2003, URA subpoenaed the telephone records for Angelita Greviskes' primary home number and Greviskes Builders' fax number from SBC. Paul Greviskes moved to quash the subpoena as an invasion of privacy, but the district court denied his motion on January 8, 2004.

Angelita Greviskes also engaged in other actions designed to conceal the source of the fraudulent faxes. On December 26, 2003, she disconnected her telephone line ending in extension 6856 and changed her secondary telephone number to 630-859-0045. She failed to reveal the telephone number change when she was deposed on December 31, 2003, instead identifying only her primary home number and her newly-assigned secondary home telephone number as her own telephone numbers. She asserted her Fifth Amendment privilege to all questions asked of her regarding the fraudulent faxes sent to URA's payroll department.

Her husband similarly asserted his spousal and attorney-client privileges in response to that same line of questioning in his deposition.

During this period of discovery on the motion to dismiss, Angelita Greviskes not only changed her secondary home telephone number, but she also misrepresented information to SBC in an attempt to block production of records. Instead of admitting to her wrongdoing, she went to lengths in an attempt to cover up her behavior. She tried to prevent the release of information relating to the Greviskes Builders' fax machine number or her previous secondary home telephone line. Rosetta Hicks, a "Service Records Clerk" at SBC stated in a declaration that she called Angelita Greviskes' primary home number in response to a complaint from Angelita Greviskes about certain records being produced. According to Hicks, during these conversations Angelita Greviskes tried to convince her that a motion to quash had been granted and, therefore, SBC should not release the records related to her former secondary telephone line (6856). Hicks contends that upon learning that the records had already been released, Angelita Greviskes started to cry and told her that the records were part of a murder case.

Although Hicks was not deposed and Angelita Greviskes would not confirm these conversations, the record supports Hicks' assertions. A fax was sent to SBC on December 31, 2003, from an Office Depot located in Angelita Greviskes' hometown which stated that a motion to quash had been entered for Paul Greviskes' office telephone number, his office fax number, and the Greviskes' previous secondary home line. Although Angelita Greviskes asserted her Fifth Amendment privilege when questioned about this fax in the evidentiary hearing, the signature of the customer who sent the fax was found to be hers. This was accomplished by comparison to another document bearing her signature, which was entered into evidence against her wishes. It

appears that she had learned that faxes could be traced to her home and had taken measures to avoid identification but had not been successful. Despite her efforts, the telephone records ultimately were obtained and revealed that one-minute calls were made from her secondary home line, 630-896-6856, to URA's fax number at the payroll department on November 24 and 25, 2003, at the same time that faxes were received by the department.

On February 4, 2004, in its reply brief in support of its motion to dismiss, URA informed the district court of Angelita Greviskes' attempts to cover up the telephone records of the telephone number from which the fraudulent documents were faxed. Based on the information briefed as well as questions concerning privileges asserted in the depositions of Angelita and Paul Greviskes, the district court decided to hold an evidentiary hearing on the motion, which was scheduled for May 26, 2004. In ordering the hearing, the district court stressed the need to consider all the evidence carefully as the allegations could have possible criminal consequences. Angelita Greviskes filed two motions to dismiss the evidentiary hearing, arguing in both that the district court was without jurisdiction to hear URA's motion to dismiss. The district court denied both of these motions to dismiss the hearing, labeling them "frivolous".

For the hearing, URA subpoenaed the testimony of both Angelita and Paul Greviskes, in part because both had asserted important privileges at their depositions and refused to stipulate to basic facts such as their home telephone number. The district court denied Paul Greviskes' motion to quash the subpoena for his testimony, along with his two motions to quash URA's subpoenas seeking telephone records from his office. Angelita Greviskes subpoenaed the testimony of Karen Osgood, counsel for URA, the testimony of Ron Paul, the head of URA's payroll department, and the production of Erickson's payroll records.

The district court granted each of URA's motions to quash these subpoenas. Such immaterial subpoenas and the motions to quash relevant subpoenas issued by URA are illustrative of Angelita Greviskes' disruptive and uncooperative attitude in the litigation process.

At the May 26, 2004, evidentiary hearing, Angelita Greviskes reasserted her Fifth Amendment privilege to all questions asked of her with the exception of her name. Paul Greviskes asserted the same privileges that had been asserted at his deposition concerning questions regarding the change of his secondary home telephone number and the fax sent to SBC in an attempt to suppress document production. He further stated that his only knowledge of the fraudulent fax sent to URA's payroll department depended upon privileged communication with Angelita Greviskes, and he refused to answer any questions regarding this matter under his spousal communications and testimonial privileges. However, he did acknowledge that "(a) he had served as administrator of the estate of his brother, who died in April 2003, (b) the post office box on the November 24 and 25 faxes was that of his law office, (c) the fax number on those faxes (630-585-8022) was listed as his brother's business's second line, (d) he and plaintiff had reviewed copies of Terry Erickson's personnel file produced by defendant, and (e) that his brother had a fax machine." *Greviskes*, 226 F.R.D at 598. He denied knowing his secondary home telephone number or having ever seen his brother's fax machine in his home. Based on his demeanor on the witness stand as well as the logic of his various assertions, the district court did not find these denials credible.

Erickson, the payroll employee who initially saw the faxes of November 24 and 25, and SBC employees were among those presented as witnesses by URA. Such testimony was necessary to support the allegations of the motion to dismiss as Angelita Greviskes would not confirm any events,

conversations, or facts alleged in the motion, including her telephone numbers. Dore subpoenaed the testimony of David Gassman, URA's chief counsel, but the district court found this examination "totally immaterial." After the hearing, both parties submitted briefs, but Angelita Greviskes simply used the brief to again attack the jurisdiction of the district court rather than address the merits of the allegations.

The district court dismissed the case with prejudice on June 16, 2004. In issuing the order, the district court noted that transmission of any one of the three faxes (November 24, November 25, or December 31) would have been enough to warrant a dismissal with prejudice, but that the district court was particularly struck by "plaintiff's deliberate, *repeated*, and unrepentant misconduct." *Greviskes*, 226 F.R.D. at 600 (emphasis added). Although the district court conceded that Angelita Greviskes was not technically in violation of the protective order governing discovery because the information included on the faxes to the payroll department were not part of a "confidential" file, the opinion described her actions as "fraudulent, criminal, and inexcusable." The district court also stressed the need to impose the particular sanction of dismissal so that Angelita Greviskes would be sanctioned "in the only manner that will deprive her of the very process she sought to perverse." *Id.* at 600. Such a harsh sanction would also serve as a means of deterring others from engaging in similar misconduct.

Furthermore, the district court awarded URA attorney's fees in compliance with Local Rule 54.3, which requires that the parties "confer and attempt in good faith to agree on the amount of fees or related non-taxable expenses that should be awarded prior to filing a fee petition." However, Angelita Greviskes' uncompromising conduct continued throughout the attorney's fees proceeding, causing unnecessary difficulty and delay. In compliance with the local rule, counsel

for URA provided Angelita Greviskes with a fee request accompanied by copies of relevant time sheets, invoices, and a summary of the billing for each attorney who worked on the case. URA's counsel redacted attorney-client privileged communications and entries relating to summary judgment materials, matters that were irrelevant to the fee petition. Furthermore, URA deducted the time charged by two attorneys and part of the time of another in the total amount of $10,317.50 from the total costs of the defense counsel to account for possible duplication. In accordance with Fed. R. Civ. P. 54(d)(1), URA also filed a bill of costs with the clerk of the district court.

Angelita Greviskes responded by objecting to the total amount in the petition, claiming that URA had failed to comply with the local rule, questioning the redactions in URA's counsel's time records, and again, arguing that the district court lacked jurisdiction. She also raised objections to the subpoenas to the telephone company. The district court found that "all of these arguments are patently frivolous." *Greviskes v. Universities Research Ass'n*, 342 F. Supp. 2d 763, 764 (N.D. Ill. 2004). Angelita Greviskes failed to identify specific objectionable billing entries, cooperate in the preparation of a joint statement, or suggest a reasonable fee to counter the fee petition offered by URA's counsel. URA responded by asking Angelita Greviskes to identify which entries by date or attorney she opposed and also requested, as allowed under Local Rule 54, Dore's billing records associated with URA's motion to dismiss. A repetitive cycle of responses ensued between the parties in which Angelita Greviskes continued to raise the same frivolous arguments objecting to the validity of the fee request without referencing a specific billing entry. In each of these responses, Dore complained about the redactions on URA's time sheets, claimed that he had no billing statements for his client, and failed to ever suggest a proper fee award.

On August 18, 2004, URA filed its motion for attorney's fees along with a Proposed Joint Statement, which Angelita Greviskes had refused to sign although such a statement was required by Local Rule 54.3. Instead, Angelita Greviskes submitted her own Proposed Joint Statement in which she disputed the jurisdiction of the district court to issue an award of attorney's fees. She further argued that URA had violated discovery rules in procuring telephone records from SBC's processing department in Texas and as such, the award was unlawful. The district court declared that such arguments were "patently frivolous." URA filed a response to Angelita Greviskes' Proposed Joint Statement by asserting that it had complied with Local Rule 54 and that her attacks on the district court were based on a misrepresentation of case authority. Ultimately, the district court awarded all of the fees sought by URA in the total amount of $54,613.50 as well as taxable costs amounting to $14,435.95 in an order issued on October 25, 2004.

## II.

We review this dismissal with prejudice for an abuse of discretion. *Dotson v. Bravo*, 321 F.3d 663, 666 (7th Cir. 2003). Abuse of discretion exists only where the result is not one that could have been reached by a reasonable jurist or "where the decision of the trial court strikes us as fundamentally wrong or is clearly unreasonable, arbitrary, or fanciful." *Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004) (citations omitted). Because the district court's decision was clearly reasonable, we find that the district court did not abuse its discretion in dismissing the case with prejudice.

The documents entered into evidence as well as the testimony from URA and SBC employees provided a sufficient basis for the district court's factual findings and conclusions. Not only was there a veritable mountain of evidence

supporting URA's allegations and implicating Angelita Greviskes in fraudulent conduct, but she never explicitly denied the allegations. Furthermore, the district court is permitted to draw negative inferences from the assertion of privileges, as it did from the testimony of both Angelita and Paul Greviskes. " 'The Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.' " *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).) In fact, even without drawing any such inferences, the district court had ample support for its findings given that it also had on record all three fax documents, the telephone records for the Greviskes' fax machine and secondary home telephone line, as well as the supporting testimony of URA employees and the SBC representative.

The district court may dismiss a case for discovery violations or bad faith conduct in litigation under Federal Rule of Civil Procedure 37 or under the inherent authority of the district court. FED. R. CIV. P. 37(b)(2)(C); *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). As the file of Terry Erickson was not marked "Confidential," Angelita Greviskes was not technically in violation of the protective order and as such, could not be held to have violated Rule 37. Nevertheless, the district court dismissed the case with prejudice because the district court possessed "the inherent authority to impose this sanction in this highly unusual and unpleasant case." *Greviskes*, 226 F.R.D. at 600; *see also Dotson*, 321 F.3d 663. Yet, the district court's inherent authority to dismiss a case is not without limitations. The inherent authority to dismiss should be used "only when there is a record of delay [or] contumacious conduct . . . . In deciding what measure of sanctions to impose, the district court should consider 'the egregiousness of the conduct in question in relation to all aspects of the

judicial process.' " *Dotson*, 321 F. 3d at 667 (quoting *Barnhill*, 11 F.3d at 1368).

The district court rightfully invoked its inherent authority to dismiss Angelita Greviskes' suit where a record of delay existed in her litigation strategy of refusing to stipulate to basic facts, submitting multiple frivolous motions to dismiss the evidentiary hearing, engaging in fraudulent misconduct, and throwing roadblocks in the process of awarding attorney's fees. Dismissal with prejudice is particularly appropriate in a case such as this in which Angelita Greviskes not only engaged in fraudulent misconduct in the course of discovery, but also attempted to obstruct justice by concealing records. Dismissal is appropriate where a party has displayed fault, bad faith, or willfulness. *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996). Rather than admit her initial wrongdoing to the district court, Angelita Greviskes subverted the purpose of the evidentiary hearing by engaging in further fraudulent conduct—this time communicating false information concerning the lawsuit to the telephone company by telephone and fax in an effort to prevent the release of information to the district court.

Although dismissal is indeed a hefty sanction, "the most severe in the spectrum of sanctions provided by statute or rule must be available . . . not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Angelita Greviskes' fraudulent conduct in the course of discovery and attempts to hide such behavior behind a cloak of further fraud and deceit is an affront to the legal process. No court should be asked to tolerate such behavior in any circumstance.

The district court properly asserted in its opinion that "to allow the offending party to continue to invoke the judicial

mechanism for [her] own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill*, 11 F.3d at 1368. The district court acted well within in its discretion in dismissing the case with prejudice, particularly in this situation where possible criminal activity occurred.

Beyond her fraudulent misconduct outside of the courtroom, Angelita Greviskes also used the litigation process itself to serve her own interests rather than the interest of justice. Her counsel and her husband filed multiple motions to quash relevant subpoenas from opposing counsel, filed multiple motions to dismiss the necessary evidentiary hearing, called superfluous witnesses and then engaged in totally immaterial questioning, and refused to stipulate to basic facts so that URA's counsel had to call additional witnesses.

All of these roadblocks not only wasted the district court's time but also significantly increased URA's counsel's necessary time and expense. As such, the district court awarded URA attorney's fees in connection with the motion to dismiss. "Our review of the district court's decision regarding whether to award attorney's fees is highly deferential, as we will reverse only for an abuse of discretion." *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004). We find that the district court did not abuse its discretion by awarding attorney's fees because, as discussed above, Angelita Greviskes caused substantial undue delay and expense with both her misconduct outside the courtroom and her litigation strategy within.

In her appeal of the district court's decision, Angelita Greviskes' arguments are often incoherent, unsubstantiated, and representative of a continuing litigation practice which evinces bad faith. An appeals court may award damages and costs to the appellee upon determining that

an appeal is frivolous. *See* FED. R. APP. P. 38. An appeal is frivolous " 'when the result is obvious or when the appellant's argument is wholly without merit'." *Ins. Co. of West v. County of McHenry*, 328 F.3d 926, 929 (7th Cir. 2003) (quoting *Grove Fresh Distributors v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002). Angelita Greviskes argues on appeal that the district court had no jurisdiction to conduct an evidentiary hearing, that she was denied due process, that the district court's factual findings and conclusions are without support in evidence, and finally, that the district court did not have jurisdiction to award costs because URA knowingly violated federal rules. "When an appeal rehashes positions that the district court properly rejected or when it presents arguments that are lacking in substance and 'foreordained' to lose, the appeal is frivolous." *Berwick Grain Co., Inc. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations omitted). This is true particularly in a case such as this in which the district court acted with forbearance and provided numerous opportunities to Angelita Greviskes to contest the allegations of misconduct.

Angelita Greviskes' appeal is frivolous on all claims. The district court had jurisdiction to conduct a hearing in response to URA's motion to dismiss in order to resolve factual issues, and Angelita Greviskes points to no authority to the contrary, instead inexplicably supporting this argument with further arguments against the imposition of a sanction. Furthermore, the district court's finding that Angelita Greviskes engaged in misconduct and attempted to obstruct justice is overwhelmingly supported by evidence in the record. Her accusations of URA violating a rule of discovery by subpoenaing SBC's offices more than 100 miles away defies not only legal standards of discovery but also common sense. Most egregiously, she maintains that she did not receive due process in the evidentiary hearing because a "standard of fairness" was not met because the district court did not deny URA's motion to dismiss, the

district court reportedly did not announce its inherent authority as a basis for the hearing, and because there was no evidence supporting the findings and conclusions of the district court. Her appeal claims that she was not afforded due process in the evidentiary hearing are almost incomprehensible and entirely nonsensical; there is simply no legal foundation for any of these claims. In fact, her arguments in her brief as a whole are unsupported by relevant caselaw or coherent legal analysis.

Angelita Greviskes wasted this court's time and URA's time in submitting this frivolous appeal and these baseless arguments may be deserving of further sanctions. It is within the authority of this court, pursuant to Circuit Rule 38, to consider awarding attorney's fees and costs to URA in connection with this appeal. However, "a statement inserted in a party's brief that the party moves for sanctions is not sufficient notice." FED. RULES APP. P. 38. Before awarding such sanctions, Rule 38 requires that either a separate motion for sanctions be filed or that we give notice that sanctions are being considered. *Clark v. Runyon*, 116 F.3d 275, 279 (7th Cir. 1997); *In the Matter of Bero*, 110 F.3d 462, 466-67 (7th Cir. 1997). Therefore, Angelita Greviskes is advised that because of the frivolous nature of her brief, we are considering awarding sanctions in the amount of reasonable attorney's fees plus costs.

Accordingly, the decision of the district court to dismiss this case with prejudice is AFFIRMED. Angelita Greviskes is ordered to show cause within fourteen days why reasonable attorney's fees and costs should not be imposed.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*