UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted July 19, 2006[*]
Decided August 3, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2539

| | |
|---|---|
| REP MCR REALTY, L.L.C., <br>     *Plaintiff-Appellee,* <br><br>          *v.* <br><br> MICHAEL W. LYNCH, <br>     *Defendant/Third-Party* <br>     *Plaintiff-Appellant,* <br><br>          *v.* <br><br> SEYFARTH SHAW L.L.P. and <br> EDWARD J. KARLIN, <br>     *Defendants/Third-Party* <br>     *Defendants-Appellees.* | Appeal from the United States <br>     District Court for the <br>     Northern District of Illinois, <br>     Eastern Division <br><br> No. 02 C 399 <br><br> **Mark Filip**, *Judge.* |

---

[*]  After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

**O R D E R**

Michael Lynch guaranteed a $31 million loan from Morgan Guaranty Trust Company of New York to Lynch's aluminum company, McCook Properties L.L.C. McCook defaulted and filed for bankruptcy, prompting Morgan to sue Lynch in federal court under the diversity jurisdiction, claiming that his personal liability on the guaranty was triggered by the bankruptcy filing. Morgan was then replaced by its assignee, REP MCR Realty, L.L.C.

For his part, Lynch answered that, despite ambiguity in the guaranty, his liability was limited to cases of fraud, waste, or gross mismanagement and that his lawyers had explained those limitations to Morgan. He also impleaded his lawyers, Seyfarth Shaw L.L.P. and partner Edward J. Karlin, under the authority of Fed. R. Civ. P. 14, asserting that they had been negligent in representing him. Although his legal theory was rather muddled, he contended in essence that he never would have made the guaranty but for his lawyers' malpractice. In pressing that claim, he relied almost exclusively on three documents ostensibly showing that he never meant to assume personal liability for the loan and that he had not agreed that a bankruptcy filing should trigger the guaranty. He produced all three of them in a supplemental document production filing, in conjunction with the discovery process.

But suing his lawyers only worsened Lynch's already substantial troubles: when Seyfarth and Karlin responded that Lynch had forged the three documents and sought sanctions, the district court agreed, dismissed the third-party complaint with prejudice, and ordered Lynch to pay almost $370,000 in fees and costs. In the same order, the court entered a judgment for REP MCR Realty on the $31 million guaranty. Lynch has appealed only from the sanctions order.

At the outset, we note that the district court's subject-matter jurisdiction over the third-party claim was clear. Diversity jurisdiction was secure over the main claim, as Morgan (the original plaintiff) was a New York banking corporation with its principal place of business in New York at the time the suit was filed, and Lynch was (and is) a citizen of Illinois. (REP MCR Realty, Morgan's assignee, is a Delaware limited liability company with its principal place of business in Texas. The citizenship of a limited liability company for diversity purposes is the citizenship of each of its members. See *Wise v. Wachovia Securities, LLC,* 450 F.3d 265, 267 (7th Cir. 2006). Based on a supplemental filing, it appears that REP MCR Realty is also diverse from Lynch. In the end, however, this is a detail, because there is no hint of collusion in this assignment, and thus the normal rule that diversity jurisdiction is determined at the time the action is commenced applies. See, *e.g., Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-71(2004).) Because it was Lynch, the defendant, who impleaded

the law firm and lawyer, the third-party claim (over which there was no independent diversity jurisdiction, as all were from Illinois) fell within the court's supplemental jurisdiction. See 28 U.S.C. § 1367(a), (b); *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006); *State Nat'l Ins. Co. Inc. v. Yates*, 391 F.3d 577, 580 & n.16 (5th Cir. 2004) (collecting cases). We turn, therefore, to the court's findings with respect to each of Lynch's three suspicious documents.

First among the questionable documents was an undated purported draft of the guaranty that contained no bankruptcy trigger and that named Lynch in his capacity as chairman of McCook Properties rather than in his individual capacity. This document was marked as Exhibit 16. One mystery suggested by that document is that it is hard to imagine why Morgan would have wanted McCook Properties to guarantee its own debt. But that mystery need not detain us here.

The court found that Exhibit 16 is much the same as the other draft guaranties and generic boilerplate used by Morgan at the time except for two suspicious pages that were modified to omit the bankruptcy trigger and make McCook Properties the guarantor rather than Lynch. A comparison between those two pages and other drafts and boilerplate strongly suggests forgery. For example, numerous typographical errors mar the two pages, suggesting that they had been retyped and changed. Additionally, there are discrepancies in fonts and format, suggesting that someone not used to generating the boilerplate guaranties made this particular draft.

With these differences in mind, the district court took testimony from various witnesses, including the document manager at the law firm that prepared all of Morgan's guaranties. The document manager testified that the discrepancies and typographical errors reveal that the draft was not produced by the firm. He also testified that this draft is one of two before the court marked "version two" (one identifying Lynch only as chairman of McCook Properties and the other showing him in his personal capacity). The document manager added that the firm's records showed that it printed only one "version two," and so one of the two before the court had to be a fake. He identified the draft produced by Lynch as the forgery. Additionally, a lawyer from Morgan's law firm testified that the signature line and titles referenced in the draft were not titles that he would have chosen for a draft corporate guaranty. Defendant Karlin also testified that he did not create this draft. For his part, Lynch undermined his own credibility by forgetting key dates, changing testimony, and refusing to answer some questions.

The second suspicious document appears to be a copy of a letter signed by Lynch and dated December 1, 1998, informing Karlin that Lynch would refuse to execute a personal guaranty—especially one where liability was triggered by a bankruptcy filing. The court decided that patent falsehoods pervaded this letter. First, the letter confuses

significant dates. For example, it recounts that Karlin transmitted the guaranty materials on December 1, when substantial evidence from various sources shows that the transmittal took place a week before. This confusion of dates suggests that Lynch wrote the letter later and back-dated it. Second, the letter states that investment banker Scott Miller, Lynch's fraternity friend, had confirmed that there would be no personal liability on Lynch's part. But Miller testified that he recalled saying no such thing. Third, Karlin testified that the assertions in the letter were false and that he did not see it until it was produced in litigation. Writing that "almost every sentence of the letter is false," the court found that it was clearly forged.

The third suspicious document was a copy of a letter dated December 28, 1998, purportedly memorializing the transmittal of several "signature plates" with Lynch's signature in his capacity as chairman of McCook Properties from one of his associates to Karlin. The court based its finding of fraud here chiefly on inconsistencies between the letter and McCall's testimony. McCall did not recognize the letter or even know what the term "signature plates" means. What is more, December 28 was five days after the executed documents were actually sent back to counsel for Morgan. Finally, Karlin denied receiving this letter.

After finding fraud in all three documents, the court decided that Lynch was the perpetrator. Lynch obviously had the motive but, more importantly, the court noted that he had insisted all along that he wrote and signed the letter dated December 1. That admission strengthened the court's conviction that Lynch had falsified the other documents. First, the letter would be worthwhile evidence only when combined with the other fakes. Second, the three forgeries have similarities that suggest that they were written by the same person for the same goal. Third, Lynch produced the two letters suspiciously labeled with consecutive Bates numbers. Finally, Lynch's demeanor at the hearing and his shifting testimony suggested that he was lying. Looking at the evidence as a whole, the court found that clear and convincing evidence established that Lynch forged the documents.

In imposing sanctions in response to Seyfarth and Karlin's motion, the district court invoked both its inherent power and Rule 37(b) and (c)(1) of the Federal Rules of Civil Procedure. It considered lesser sanctions but ultimately decided that anything short of dismissal with prejudice would downplay the severity of the wrongdoing. In addition, the court also awarded costs and fees to Seyfarth and Karlin.

On appeal, Lynch raises several arguments that are either irrelevant or nonsensical. Reading his brief as generously as we can, we understand him to be arguing that the district court's findings were based on insufficient evidence. This is a non-starter. We cannot discern any reversible error in the district court's thorough opinion. Indeed, the court correctly required clear and convincing proof, see *Maynard*

*v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003), and made its finding based on the kinds of evidence we have approved before, see*, e.g.*, *Greviskes v. Univ. Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 655-56 (7th Cir. 2003).

As for the choice of sanctions, Lynch does not contend that dismissal was too harsh or that the award of fees and costs was too high. Therefore, those potential issues are waived. See *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1025 n.6 (7th Cir. 2003). Waiver aside, we can hardly consider dismissal of the third-party claim inappropriate here. See *Greviskes*, 417 F.3d at 759; *Maynard v. Nygren*, 372 F.3d 890, 892-93 (7th Cir. 2004). Moreover, although fees and costs seem high, well more than a year passed between Seyfarth and Karlin's motion for sanctions and entry of judgment, and Lynch has no one but himself to blame for persisting so long in his fraud.

Consequently, the judgment of the district court is **AFFIRMED**.