NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals
## For the Seventh Circuit
### Chicago, Illinois 60604

Submitted September 20, 2012 [1]
Decided October 22, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-1783

| | |
|---|---|
| IGOR VLADIMIR ASLAN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 C 5517 |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | John W. Darrah, *Judge.* |

**ORDER**

In 2006, Igor Aslan was arrested and charged with three counts of wire fraud in connection with a large-scale internet fraud scheme. He eventually pled guilty to one count of wire fraud pursuant to a plea agreement. The district court sentenced him to

---

[1] Pursuant to Seventh Circuit Internal Operating Procedure 6(b), this successive appeal was submitted to the panel of judges that disposed of Aslan's initial direct appeal of his conviction and sentence. Upon review of the briefs and the record and consideration of the standards set forth in Fed. R. App. 34(a)(2), the panel has determined that oral argument is unnecessary to the resolution of this appeal. The appeal has therefore been submitted on the briefs and the record.

sixty-three months' imprisonment and three years of supervised release. The court also ordered him to pay restitution in the amount of $187,982.48. We affirmed his sentence. *United States v. Aslan*, 644 F.3d 526 (7th Cir. 2011).

The government agents who effected Aslan's arrest seized from him a number of items which they listed on an official inventory form SD-302. Included on the list were items of little to no monetary value: a baseball hat; a neck scarf; two windbreaker jackets; a brown belt; shoelaces; a bag of tobacco with rolling papers; several identification cards; a checkbook; a notebook; $34.55 in U.S. currency; two Illinois driver's licenses; a Social Security card; two Western Union cards; a bank check card; a credit card; a black fanny pack containing scraps of paper, receipts, a pen, a jar of LockHeat, a lighter, a ChapStick and two sets of keys; and a cell phone. R. 46, Ex. 2, at 6-7.

In 2007, Aslan began sending letters to public officials and filing motions in his criminal case in efforts to recover his property. Eventually, he also filed a *Bivens* action against the federal agents. *See Aslan v. DHS Agent a/k/a "Maggie" and Unknown FBI Agent, John Doe*, No. 10 C 3964 (N.D. Ill. June 25, 2010). Although the government agreed to return the items listed on the FBI inventory, Aslan refused to accept the government's offer. Aslan's own inventory of the items seized was vastly different from the list maintained by the FBI, and Aslan would accept only the items that he claims were stolen from him by various government agents. Unlike the FBI's inventory, Aslan's list was ever-changing; over time, the list included more items and some of the items purportedly increased in value.

In a January 26, 2007 letter to the U.S. Attorney, Aslan claimed that the two arresting officers[2] had seized from him $1830.75 in cash, a gold Doxa brand watch which Aslan described as "very old," a cell phone, and an eighteen carat gold ring with a one carat diamond, in addition to many of the items listed in the FBI's inventory. R. 12, at 9-11. In a May 22, 2008 "Motion for Return of Personal Property" that Aslan filed in his criminal case, he sought the return of $1730 in cash, a gold ring with a one carat diamond, a "very old, very expensive " Swiss watch which was now listed as Zenith brand, a computer and a video camera, again in addition to some of the items listed on the FBI's inventory. R. 12, Ex. 1, at 2-5. At the bottom of the list was an item labeled "1 leader Jack," the meaning of which becomes more apparent later.

---

[2]     Aslan was arrested by an FBI agent and an agent of Immigration and Customs Enforcement ("ICE"). The ICE agent had prior contact with Aslan and her presence was requested in order to facilitate a smooth arrest. R. 82, Tr. at 43.

In February and March 2010, Aslan filed additional motions related to the property, this time in the court of appeals during the pendency of his direct appeal from his criminal conviction. *United States v. Aslan*, Case No. 08-1486, Dkt. 114, 116. The 1 "leader Jack" had become "2 Jack leder." The gold ring still held a one carat diamond, and the gold watch no longer had a brand but was still described as "very expensive." There were now two computers missing as a well as a Nikon camera. For the first time, Aslan also claimed that the agents seized from him "1 car, Ford Grand Victoria - $15000."[3] This time, Aslan helpfully listed the value of the more expensive items. In addition to the $1,730 cash, he assigned a value of $7,000 to the gold ring, $200,000 to the gold watch, $15,000 to the Ford, $3,000 to the two computers, $2,000 to the Nikon camera, and $200 to the "2 leder Jak," for a grand total he calculated to be $228,730.[4]

By April 30, 2010, the list had grown again. R. 12, Ex. 1, at 7-15. The gold ring now sported four diamonds, as did the gold watch. The computers were now described as laptops. The camera was simply "large." The Ford "Grand Victoria" remained on the list. The newest items were five gold coins, described as eighteen carat gold and dating from the time of Maria Theresa.[5] Also included were two "Leder jacket new." The government interpreted this as two leather jackets, an explanation supported by Aslan's next inventory in the June 25, 2010 *Bivens* suit Aslan filed against the agents. In that case, Aslan listed the items taken from him on arrest as $1730 in cash, a gold ring with a one carat stone, a gold Zenith watch with a four carat diamond, a car, a large camera, five gold coins, two "recently purchased" laptop computers, and two leather jackets.

---

[3]     There is no such car as a Ford Grand Victoria. Until 2012, Ford manufactured a Crown Victoria, which shared a platform and many features with the Mercury Grand Marquis.

[4]     By our calculation, this number is $200 short.

[5]     Maria Theresa was born in 1717. In addition to bearing sixteen children, Maria Theresa reigned as Archduchess of Austria, and Queen of Hungary and Bohemia from 1740 to 1780. She was also named Holy Roman Empress when her husband became the Holy Roman Emperor. Her youngest daughter was Queen Marie-Antoinette of France, and her son was Holy Roman Emperor Joseph II. One can only guess at the value of gold coins dating from Maria Theresa's reign. *See* http://www.britannica.com/EBchecked/topic/364907/Maria-Theresa (last visited October 10, 2012).

None of these actions, motions or letters bore fruit for Aslan and that brings us to the present case. On August 31, 2010, Aslan filed a Rule 41(g) motion under the number of his original criminal case, seeking the return of his property. The court construed the motion as a new civil case. *See United States v. Shaaban*, 602 F.3d 877, 879 (7th Cir.), *cert. denied*, 131 S. Ct. 542 (2010) (once a defendant has been convicted, a motion under 41(g) is deemed to initiate a civil equitable proceeding). Attached to Aslan's complaint as exhibits were various documents he had filed over the years, some containing his ever-growing lists of seized property. No single list was consistent with any other list, but it seemed that Aslan now wanted to recover every item he had ever listed.

The district court ultimately decided to hold an evidentiary hearing to resolve the factual disputes between Aslan and the government agents who arrested him. *See* Transcript, R. 82. At the hearing, the government presented the testimony of two FBI agents (one arresting agent and the case agent) and the ICE agent who had participated in Aslan's arrest. All testified consistently that Aslan did not have any jewelry or watches, computers, cameras or gold coins when he was arrested. Nor did the agents seize a car from Aslan at any time. Instead, all of the items taken from Aslan were placed in a brown bag and were inventoried on the form SD-302. The two FBI agents involved in processing Aslan's property both testified that the SD-302 inventory accurately reflected the contents of the bag. The bag was stored by the FBI and still contained all of the original items listed in the inventory. The ICE agent testified that, for several of her prior meetings with Aslan, she met him at a homeless shelter on the north side of Chicago, a fact that the government argued was inconsistent with ownership of such valuable items.

When confronted at the evidentiary hearing with three versions of property lists that Aslan had submitted in different court proceedings, Aslan conceded that he wrote all of the various lists. In response to a question from the court, he also testified that a list he had submitted to the court in the instant proceeding on November 2, 2011[6] accurately reflected all of the property seized from him. That list included all of the more valuable property including the gold ring (with a one carat diamond), the gold watch (with a four carat diamond), five gold coins from the time of Maria Theresa, two laptop computers, two leather jackets, a camera and the Ford "Grand Victoria." Aslan was unable to produce evidence that he had ever owned any of the valuable items that he wished the government to return.

---

[6]     The court said that the document was filed November 20, 2011, but the file stamp appearing on the document in the record is 11/02/11. R. 48, at 3.

Because Aslan was appearing *pro se*, the court gave him wide latitude in questioning the witnesses, in submitting documentary evidence, and in testifying on his own behalf.  At times when Aslan's questioning of the government's witnesses became confused, the court stepped in and questioned the witnesses, thoroughly testing the government's evidence.  The court accepted into evidence over the government's objection every document that Aslan submitted.

The court found that the testimony of the government's witnesses was clear, convincing and persuasive.  The court also deemed the agents credible in their testimony regarding the items that had been seized from Aslan.  The court concluded that the exhibits submitted into evidence by the government generally supported the testimony of the government's witnesses.  Conversely, the court found that Aslan was not credible and that his testimony was not supported by the documentary evidence.  The court noted the inconsistencies in the assorted lists of seized property that Aslan submitted to the court at different times.  Finding that Aslan failed to meet his burden of proof, the court denied his motion for the return of any items not listed in the government's inventory.  The government admitted that the items in the original evidence bag belonged to Aslan and sought to return those items to Aslan at the hearing.  Under the court's supervision, the items were transferred to Aslan and he signed a receipt for the items.  Aslan appeals.

Perhaps we should not be surprised that the list of valuable property stolen from Aslan by government agents has grown on appeal: four diamonds have been returned to the gold ring, and now an eighteen carat gold bracelet is also missing.  The watch is described for the first time as a pocket watch.  The car, the cash, the laptop computers, a video camera, the five gold coins issued during the reign of Maria Theresa, and the leather jackets remain on the list.  Aslan has also increased his estimates for the value of some of the items: the computers have doubled in value to $6000, and the camera is now worth $3170 (up from $2000).

The entire substance of Aslan's appeal is that everyone is lying except him.  In addition to lodging scurrilous accusations against the district court, the AUSA, and the government agents, Aslan's briefs consist entirely of his own version of the events surrounding his arrest, a story that was thoroughly rejected by the district court after hearing all of the relevant witnesses and judging their credibility.  Aslan offers no legal basis to challenge the district court's judgment.  Instead, he would simply like for the court of appeals to re-evaluate the evidence.

Our review of the district court's factual findings is for clear error.  *See* Fed. R. Civ. P. 52(a)(6).  We review the district court's denial of a Rule 41(g) motion for abuse of

discretion. *Stevens v. United States*, 530 F.3d 502, 506 (7th Cir. 2008). A court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact. *United States v. Freeman*, 650 F.3d 673, 678-79 (7th Cir. 2011). Aslan asserts no legal error and has given us not one single reason to doubt the correctness of the district court's assessment of the witnesses and the evidence. The court's factual findings were based largely on its assessment of the credibility of the witnesses, and a court's determinations of witness credibility can virtually never be clear error. *United States v. Stewart*, 536 F.3d 714, 720 (7th Cir. 2008).

The appeal is utterly frivolous, not to mention defamatory. *See Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 760 (7th Cir. 2005) (an appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit). Frivolous appeals are sanctionable. *See Sambrano v. Mabus*, 663 F.3d 879, 881 (7th Cir. 2011) (the pursuit of a frivolous appeal is sanctionable). This is not the only time that Aslan has lodged fantastical charges of theft against agents of the United States government. Attached to his reply brief is a July 2012 letter he sent to Senator Richard Durbin requesting an investigation into the alleged actions of an INS agent. In that letter, Aslan asserted that, in 1994, the INS agent stole from him $15,000 in United States currency, 2000 - 2500 Russian rubles, a gold ring, a gold watch, a gold bracelet, *eighty-four* gold coins from the time of Maria Theresa, a stamp collection, and certified original paintings by Picasso, Van Gogh and Rembrandt. Based on this theft and other grievances regarding how he has been treated by immigration authorities, Aslan suggested to Senator Durbin that he should now have the right to U.S. citizenship or at least permanent residency. These assertions appear to repeat allegations from a frivolous 2004 lawsuit Aslan filed in the Northern District of Illinois. *See Aslan v. INS Representative*, 2004 WL 1403688 (N.D. Ill. June 22, 2004). As we noted earlier, Aslan also filed a frivolous, time-barred *Bivens* action against the same defendants he pursues here. *See Aslan v. DHS Agent a/k/a "Maggie" and Unknown FBI Agent, John Doe*, No. 10 C 3964 (N.D. Ill. June 25, 2010). Aslan's appeal of the *Bivens* action was dismissed for failure to pay a partial filing fee.

Aslan has wasted the court's time and the government's time with this frivolous appeal. This is part of a disturbing pattern of misuse of judicial resources by Aslan, including the two other frivolous actions Aslan has filed accusing government agents of misconduct. Therefore, pursuant to Fed. R. App. P. 38, Aslan is ordered to show cause within fourteen days why he should not be sanctioned for filing this frivolous appeal. The judgment of the district court is

AFFIRMED.