# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #049

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **25th day of October, 2024** are as follows:

**BY McCallum, J.:**

2023-CC-01029    *RAFAEL ANTONIO MENA CHAVEZ A/K/A SERGIO BALBOA, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, INGRID MENA PEREZ AND KELVIN PEREZ AND PLAINTIFF-INTERVENORS EMR (USA HOLDINGS), INC., AND SOUTHERN RECYCLING, LLC  VS. METSO MINERALS INDUSTRIES, INC. N/K/A METSO OUTOTECH USA, INC. AND ABC INSURANCE COMPANY (Parish of Orleans Civil)*

REVERSED; MOTION TO DISMISS GRANTED WITH PREJUDICE; REMANDED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.
Hughes, J., dissents for the reasons assigned by Weimer, C.J., and Griffin, J.
Crichton, J., additionally concurs and assigns reasons.
Griffin, J., dissents for the reasons assigned by Weimer, C.J., and assigns additional reasons.

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01029

**RAFAEL ANTONIO MENA CHAVEZ A/K/A SERGIO BALBOA, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, INGRID MENA PEREZ AND KELVIN PEREZ AND PLAINTIFF-INTERVENORS EMR (USA HOLDINGS), INC., AND SOUTHERN RECYCLING, LLC**

## VS.

**METSO MINERALS INDUSTRIES, INC. N/K/A METSO OUTOTECH USA, INC. AND ABC INSURANCE COMPANY**

On Supervisory Writ to the Orleans Civil District Court, Parish of Orleans Civil

**McCALLUM, J.[1]**

The fidelity of our courts is essential if our system of government is to retain any semblance of confidence in the eyes of its citizens. A necessarily sacrosanct principle in that system is the ability of the party litigants to know against whom they are litigating. What could be more fundamental? It is not hyperbole to suggest that nothing less than the superstructure of our justice system rests upon the foundation of this proposition. With this as the backdrop, we begin our consideration of the matter at hand.

We granted certiorari in this case to consider whether a party may lose his right to maintain a lawsuit filed under a false name and illegally obtained identity. After careful consideration of this issue, we hold that courts have clear, inherent authority to dismiss an action with prejudice when a petitioner's conduct undermines the integrity of the judicial process. Finding the petitioner's conduct in this matter was deleterious to the integrity of the judicial process, we conclude the trial court abused its discretion in denying the defendant's motion to dismiss.

---

[1] Justice Jeannette Theriot Knoll, retired, appointed Justice *Pro Tempore*, sitting due to the vacancy in Louisiana Supreme Court District 3.

## FACTS AND PROCEDURAL BACKGROUND

Petitioner, Rafael Antonio Mena Chavez ("Mr. Chavez"), instituted this action under the name "Sergio Balboa." Mr. Chavez had obtained employment with Southern Recycling, LLC. ("Southern Recycling") using the name "Sergio Balboa," and an associated social security number which he had purchased. He continued to use the alias when he sought medical attention for injuries sustained while working for Southern Recycling, and when he applied for workers' compensation benefits. Thereafter, he filed this lawsuit under the same name and identity, seeking damages against Metso Minerals Industries, Inc. ("Metso") in the Civil District Court for the Parish of Orleans.[2]

Southern Recycling, EMR (USA Holdings), Inc., and Constitution State Services (referred to collectively as "intervenors") intervened alleging they had been paying workers' compensation benefits, including weekly indemnity and medical benefits, to "Sergio Balboa." The intervenors asserted that, to the extent "Sergio Balboa, is found to be entitled to recover against any defendant answerable for his injuries and damages, then in that event, … [the intervenors] are entitled by preference and priority to the recovery of benefits paid, and/or alternatively, a set-off for the total amount of compensation and medical benefits paid, as well as any amounts which may be due in the future." Intervenors alleged they had already paid to Mr. Chavez, or on his behalf, $34,609.00 in weekly indemnity benefits and $993,735.88 in medical benefits, for a total of $1,028,344.88.[3]

---

[2] Although Mr. Chavez was employed by Southern Recycling and working on its premises at the time of his injuries, Mr. Chavez filed his petition against Metso asserting, among many other claims, product liability and negligence causes of actions. Mr. Chavez alleges he was injured by a large recycling crusher manufactured by Metso. He sought damages in amounts over one million dollars both individually and on behalf of his minor children, I.M.P. and K.M.P.

[3] Southern Recycling has since further reached a separate settlement with Mr. Chavez, in the amount of $550,000.00, as described in more detail within the judgment signed on March 21, 2022, by the State of Louisiana, Office of Workers' Compensation:

> IT IS ORDERED, ADJUDGED AND DECREED that the Petition for Authority to enter into a compromise settlement under the terms of La. R.S. 23:1271, et seq.,

2

After Metso removed the case to federal court, Mr. Chavez continued to file pleadings under the name of "Sergio Balboa." In fact, the federal court referred to petitioner as "Sergio Balboa" in an order remanding the matter back to state court. *Balboa v. Metso Minerals Indus., Inc.*, No. 2018-9968, 2019 WL 8888170 (E.D. La. Jan. 2, 2019). After remand, Mr. Chavez once more used the name "Sergio Balboa" in his answer to the intervenors' petition of intervention.

Over three years after first filing his lawsuit, Mr. Chavez moved to amend and supplement his petition. Significantly, he sought to state his true identity by changing his name to "Rafael Antonio Mena Chavez" and to further clarify his biological parentage of his two minor children. The district court granted the motion, officially amending the suit to reflect what is believed to be Mr. Chavez's actual name.

Metso then filed a motion to dismiss, seeking dismissal of Mr. Chavez's lawsuit with prejudice. Metso argued that Mr. Chavez's filing under a false identity damaged the integrity of the judicial process. Relying on *Rodriguez v. Bollinger Gulf Repair*, 2007-1476, p. 6 (La. App. 4 Cir. 05/21/09), 985 So. 2d 305, 308, which held that "a party who files a suit under a false name and proceeds with that deception loses the right to seeks [sic] judicial relief for the claims he/she was advancing," Metso contended that Mr. Chavez intentionally deceived the court and parties in the matter, and therefore, lost his right to seek judicial relief for his claims.

filed herewith, be and the same is hereby approved and judgment is rendered herein in favor of Claimant, Rafael Antonio Mena Chavez a/k/a Sergio Balboa, and against Employer, Southern Recycling LLC in the amount of FIVE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($550,000.00) in full and final payment, settlement, satisfaction and compromise of any and all past, present, or future claims for worker's compensation indemnity benefits, medical benefits, including prescription expenses, after the same Claimant has approved this document (with the exception of his April 2022 appointment with Dr. Matthew Mutter), vocational rehabilitation expenses, travel expenses, wages, attorney's fees, interest, penalties or charges or costs due and owing, or that will be due and owing in the future, arising out of or growing out of any injury Claimant may have sustained during any September 20, 2017 accident or the results or consequences therefrom, including but not limited to any injury to any part of his body including any aggravation to consequences thereof.

Mr. Chavez countered that his filing under a false identity was a mistake, would not have a significant impact on the proceedings, and at best, was mere constructive contempt, which does not merit the punishment of dismissal with prejudice. Mr. Chavez admitted that although he used an "alias" and "paid somebody for an ID and a social [security] number," he did so only to procure employment in the United States. Mr. Chavez explained that he believed he could use that identification in court filings. At the hearing on the motion to dismiss, Mr. Chavez's lawyers specifically argued, "So [Mr. Chavez's] injuries are very severe. The fact that the lawyers filed pleadings that were not answering questions about identity and the caption stayed the same, we don't think that's of the same quality . . . as blatantly lying under oath." Intervenors also opposed Metso's motion, adopting the reasonings and arguments of Mr. Chavez.

The trial court denied Metso's motion to dismiss. In addressing counsel for petitioner the trial court cautioned: "you've got some serious thinking to do about this case, buddy, you know, and you need to ask around about what juries are doing in Civil District Court with people they don't think have credibility when they come to court, because it ain't been pleasant, not at all." However, further addressing Metso's assertions of fraud or willful deception by Mr. Chavez, the trial court found "that has not been done at this juncture," and that "[t]hese are [Metso's] arguments and allegations, and we ain't there yet."

Metso filed a writ with the Louisiana Court of Appeal, Fourth Circuit, which denied the writ. Metso then sought relief with this Court. We granted certiorari and docketed the matter for oral argument. *Chavez v. Metso Minerals Industries, Inc.*, 2023-1029 (La. 12/19/23), 374 So. 3d 972.

## LAW AND DISCUSSION

In reviewing the specific facts of this case, we must determine what consequences are appropriate in light of Mr. Chavez's conduct in deceiving the court

4

and other parties as to his identity, including determining whether Mr. Chavez should be allowed to maintain his suit. At the center of this matter is the inviolability of the judicial process. We are first tasked to decide whether Louisiana courts, in order to preserve the integrity of the judicial process, have the authority to dismiss an action with prejudice when a petitioner files suit under a false name. We find the courts do have this authority.

Metso cites federal court decisions which dismissed suits with prejudice where a party violated federal rules of civil procedure, including filing suit under a false name. Metso contends this Court should adopt these sanctions and find that Mr. Chavez has violated La. C.C.P. arts. 891 and 863.

It is clear that our Code of Civil Procedure contemplates truthfulness in pleadings, as reflected by the following various code articles. "The petition shall comply with Articles 853, 854, and 863. . . ." La. C.C.P. art. 891 A. "It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation[.]" *Id.* "Every pleading shall contain a caption setting forth the name of the court, the title and number of the action, and a designation of the pleading. The title of the action shall state the name of the first party on each side with an appropriate indication of other parties." La. C.C.P. art. 853. "Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name… A party who is not represented by an attorney shall sign his pleading[.]" La. C.C.P. art. 863 A. "[T]he signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies [that] [e]ach allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a

reasonable opportunity for further investigation or discovery." La. C.C.P. art. 863

B(3). "If, upon motion of any party or upon its own motion, the court determines

that a certification has been made in violation of the provisions of this Article, the

court shall impose upon the person who made the certification or the represented

party, or both, an appropriate sanction[.]" La. C.C.P. art. 863 D.

Louisiana Code of Civil Procedure Article 863 is similar to, and modeled

after, Rule 11 of the Federal Rules of Civil Procedure for the United States District

Courts.[4] *See Nunez v. Burgos*, 2016-568, p. 9 (La. App. 5 Cir. 03/15/17), 215 So.

---

[4] Titled, "Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions," FRCP Rule 11 provides the following pertinent provisions:

(a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented.

…

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

…

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

…

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective

3d 931, 937 ("La. C.C.P. art. 863 . . . was derived from Rule 11 of the Federal Rules of Civil Procedure."). Rule 11 permits a court to impose appropriate sanctions for misrepresentations in pleadings. Additional authority for the imposition of sanctions is provided by FRCP Rule 41 (b), which permits a court to dismiss an action with prejudice when a party violates a federal rule of civil procedure.[5] Federal courts have found that Rule 11 and Rule 41 B, together, allow a federal district court to dismiss a suit with prejudice, including cases where a party has filed suit under a false name.

For example, in *Zocaras v. Castro*, 465 F. 3d 479 (11th Cir. 2006), the court of appeal affirmed a district court's dismissal of a suit with prejudice. In that case, the district court considered "defendants[' motion] to dismiss pursuant to Federal Rules of Civil Procedure 11 and 41(b) because the plaintiff had proceeded under [a] false name[.]" *Id.*, 465 F. 3d at 482. The appellate court noted the following conduct by the party who filed suit:

> Among other things, the [district] court found that the plaintiff's use of a false name throughout the two years leading up to the trial had not been negligent or the result of a misunderstanding but was deliberate and willful. … The plaintiff did not merely slip up. He followed a pattern of deception for a period of at least six years from the time he got the driver's licenses in 1996 through multiple arrests, convictions, and incarcerations, and filed more than thirty pleadings and motions under a false name in this case.

*Id.*, 465 F. 3d at 483. The court emphasized that "Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules." *Id.*

---

deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

[5] Titled, "Dismissal of Actions," FRCP Rule 41 provides the following pertinent provision:

(b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

Another example is *Dotson v. Bravo*, 321 F. 3d 663 (7th Cir. 2003), which also dealt with a motion to dismiss. As in *Zocaras*, the district court in *Dotson* considered sanctions against a party who filed a suit for damages under a false name. It ultimately granted the defendant's motion. On appeal, the dismissed party argued "that the district court improperly considered his use of a false name prior to the filing of this lawsuit and that, in any event, the [defendants] were not prejudiced by his use of a false name." *Id.*, 321 F. 3d at 666. Considering federal procedural discovery rules, the court of appeal found that it could sanction an offending party with the dismissal of his suit with prejudice when he violates these rules. *Id.*, 321 F. 3d at 667. The court noted the conduct of the dismissed party:

> [The] list of egregious conduct includes: 1) filing a federal civil rights claim under a false name; 2) serving unverified answers to interrogatories propounded by the City containing lies about his true identity, date of birth, and complete arrest record; 3) serving verified responses to the same interrogatories (following the issuances of a court order compelling such disclosure) that still did not disclose his correct birth date or arrest record; 4) lying under oath about his true name and birth date in a deposition …; 5) lying about his true name to police when arrested …; and 6) continuing to conceal his true identity from state officials throughout the multi-year duration of his three state criminal trials and incarceration.

*Id.*, 321 F. 3d at 668. The court further "recognize[d] that dismissal is a harsh sanction, but 'the most severe in the spectrum of sanctions provided by statute or rule must be available … not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id.*, 321 F. 3d at 667 (citing *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778 (1976) (per curiam)); *see also, Prince v. Delaware Cnty. Bar Ass'n*, No. CIV. A. 1992-1942, 1993 WL 141711, at *2 (E.D. Pa. May 3, 1993) ("Conduct that constitutes fraud on the court has been defined as 'misconduct [that] tampers with the judicial machinery and subverts the integrity of the court itself.' … Plaintiff in the case at bar has filed this suit using a false name. This court finds that this conduct is the type that

8

constitutes fraud on the court because it clearly tampers with the judicial machinery and subverts the integrity of the court itself. … this court finds that where a plaintiff files an action under an alias name, the appropriate sanction under Fed.R.Civ.P. 11 is the dismissal of Plaintiff's suit as a fraud against the court." (internal citations omitted)).

Mr. Chavez contends Louisiana's Article 863 is distinguishable from the federal rules of civil procedure because Louisiana has not specifically provided the sanction of dismissal. Mr. Chavez argues the Legislature was well aware of the sanctions provided in the federal rules of civil procedure when it modeled Article 863 after the federal rules. He contends the Legislature clearly chose not to adopt the same sanctions for violations of Article 863 in any statutory provision. Mr. Chavez asserts that this Court should not now interject dismissal as a sanction for an Article 863 violation.

Additionally, Mr. Chavez argues that Metso is effectively seeking dismissal of his suit for mere constructive contempt pursuant to Louisiana Code of Civil Procedure article 224(4).[6] Citing Louisiana Constitution Article V, Section 2,[7] Louisiana Code of Civil Procedure Article 227,[8] and Louisiana Revised Statute

---

[6] Titled, "Constructive contempt," La. C.C.P. art. 224(4) provides:

> A constructive contempt of court is any contempt other than a direct one.
>
> Any of the following acts constitutes a constructive contempt of court:
> …
> (4) Deceit or abuse of the process or procedure of the court by a party to an action or proceeding, or by his attorney;

[7] Titled, "Habeas Corpus, Needful Writs, Orders and Process; Contempt," La. Const. Art. V, § 2 provides:

> A judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court. Exercise of this authority by a judge of the supreme court or of a court of appeal is subject to review by the whole court. The power to punish for contempt of court shall be limited by law.

[8] Titled, "Punishment for contempt," La. C.C.P. art. 227 provides:

> A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.

13:4611 (1)(d)(i),[9] he asserts that constructive contempt does not carry the possibility of a sanction of dismissal. In essence, Mr. Chavez argues that, without any positive law mandating or authorizing dismissal of an action for violations of Articles 891 and 863, or for constructive contempt, the courts are powerless to provide such a sanction.[10]

We disagree. A review of *Zocaras* and *Dotson* reflects that it is not merely by applicability of statutory law or rules that the federal courts found authority to dismiss the respective actions. Instead, the courts specifically noted that, even without statutory authority, they had inherent authority to sanction the parties with dismissal of their actions. *Zocaras*, 465 F. 3d at 483 ("In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation.") (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L. Ed. 2d 734 (1962)); *Dotson*, 321 F. 3d at 667 ("Beyond any rule-based justification, the

The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in R.S. 13:4611.

[9] Titled, "Punishment for contempt of court; defenses," La. R.S. 13:4611(1)(d)(i) provides:

Except as otherwise provided for by law:

(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

…

(d)(i) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.

[10] Mr. Chavez further relies on *City of New Orleans v. Police Ass'n of Louisiana, Teamsters Loc. No. 253*, 371 So. 2d 638, 641 (La. App. 4th Cir. 04/19/79) (per curiam on rehearing), in support of his argument that contempt is not an inherent power, and sanctions for contemptuous conduct must be found in positive law. First, we are not bound by the decisions of the lower courts. Second, *City of New Orleans* is distinguishable in that it dealt with a specifically enumerated contempt and sanction, "disobeying or resisting a lawful order, or preliminary injunction[.]" *See* La. R.S. 13:4611 (A)(2), now La. R.S. 13:4611 (1)(b). Finally, as discussed herein, we have found that courts have inherent authority to take action to protect the integrity of the judicial process, in addition to statutorily provided contempt, so that courts may effectuate and exercise their jurisdiction and independence.

court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L. Ed. 2d 27 (1991)). Additionally, the *Zocaras* court reasoned that "[b]ecause courts must be able to preserve the integrity of the judicial process, we have no hesitation in concluding that a party who files suit under a false name and proceeds with that deception right up to trial loses the right to seek judicial relief for the claims he was advancing." *Zocaras*, 465 F. 3d at 485. Likewise, the *Dotson* court observed that "[f]iling a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action." *Dotson*, 321 F. 3d at 668.

Citing these federal court decisions, the Louisiana Fourth Circuit has found that courts have inherent authority to sanction parties with dismissal of their actions in order to protect the integrity of the judicial process. *Rodriguez*, 2007-1476, p. 6, 985 So. 2d at 308 ("Because courts must be able to preserve the integrity of the judicial process, this Court also finds that a party who files a suit under a false name and proceeds with that deception loses the right to seeks (sic) judicial relief for the claims he/she was advancing.") (quoting *Zocaras*, 465 F.3d at 485). Reviewing the trial court's grant of a defendant's motion to dismiss, the Fourth Circuit noted the following:

> Plaintiff's list of egregious conduct includes: (1) lying about his true name, place and date of birth on his application in order to obtain a job at the Bollinger shipyard; ([2]) filing a civil lawsuit under a false name; ([3]) lying under oath about his true name and birth date in a deposition taken on July 25, 2006; and ([4]) serving answers, in June of 2006, to interrogatories propounded by Bollinger Gulf Repair containing lies about his true identity, date of birth, and his place of birth.

*Rodriguez,* 2007-1476, p. 5, 985 So. 2d at 308. The court of appeal ultimately found: "[o]ur review of the case law leads this Court to find that the instant case represents precisely the situation where one party's conduct so violates the judicial process that

11

imposition of a harsh penalty, as dismissing the case with prejudice, is appropriate." *Id*. Metso cites the reasoning in *Rodriguez* to advance its argument that courts have inherent power to protect the integrity of the judicial process, and that in this specific case, Mr. Chavez's conduct rose to such a flagrant level that only a sanction of dismissal is sufficient to deter similar future conduct.

Courts have inherent authority to do all things necessary to independently and efficiently exercise their functions as courts. "The powers of government of the state are divided into three separate branches: legislative, executive, and judicial." La. Const. Art. 2, § 1. "The constitutionally mandated separation of governmental power places limitations on the authority of each branch as respects the power of the others." *Bester v. Louisiana Supreme Court Committee on Bar Admissions*, 2000-1360, p. 2 (La. 02/21/01), 779 So. 2d 715, 717. "This trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and executive branches cannot abridge." *Id*. "Inherent power confers upon courts the authority to do all things reasonably necessary for the exercise of their functions as courts." *Id*. "The judiciary's inherent power is a necessary concomitant to the judicial power, but pertains to the administration of the business of the courts." *Id*. "The inherent powers doctrine exists 'because it is essential to the survival of the judiciary as an independent branch of government.'" *Id*. (quoting *Konrad v. Jefferson Parish Council*, 520 So.2d 393, 397 (La.1988)).

Necessarily then, courts have inherent authority to protect the integrity of the judicial process. "The accepted jurisprudence of this country is that the power to punish for contempt is inherent in all of its courts and its legislative bodies, whether with or without constitutional grant[.]" *State ex rel. Morton v. Meyers*, 171 La. 313, 316, 131 So. 31, 21 1930). Mr. Chavez contends that Louisiana has limited the penalties for contempt, specifically citing penalties for constructive contempt. However, we find the contempt provisions do not specifically address the issue

12

where the egregious conduct of a party impairs the ability of a court to protect the integrity of the judicial process as a whole. To that end, "[a] court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law." La. C.C.P. art. 191. By enacting La. C.C.P. art. 191, the Legislature clearly contemplated that it cannot legislate all potential conduct and issues that arise before a court. It therefore broadly acknowledged the necessary, inherent powers courts have in order to effectuate and exercise their jurisdiction and to protect the judicial process. Furthermore, "[t]he separation of powers by our state constitution establishes an inherent judicial power which the legislative and executive branches cannot abridge." *State in Interest of Johnson*, 475 So. 2d 340, 341 (La. 1985). "The inherent judicial power may be aided by the legislative and executive branches, but their acts or failure to act cannot destroy, frustrate, or impede the court's inherent constitutional authority." *Id*, 475 So. 2d at 342.

Although we are not bound by the decisions of the federal courts of appeal, or the lower courts of this State, we find them persuasive. We further agree with the Fourth Circuit's reasoning in *Rodriguez* and adopt it. We find that courts have clear, inherent authority to dismiss an action with prejudice, including when a petitioner files suit under a false name. This serves the purpose of ensuring the integrity of the judicial process.

Having found courts have inherent authority to dismiss an action with prejudice, we next consider whether the trial court abused its discretion in denying Metso's motion to dismiss. In deciding whether to exercise the authority to dismiss an action, the federal courts reviewed the lower courts' decisions under an abuse of discretion standard. *See Zocaras*, 465 F. 3d at 483; *Dotson*, 321 F. 3d at 666. Similarly, Louisiana courts generally employ an abuse of discretion standard when reviewing lower court decisions on sanctions or dismissal. *See, e.g., Jones v. Cisneros*, 2020-0582, p. 3 (La. App. 4 Cir. 04/07/21), 315 So. 3d 959, 962 ("An

13

appellate court reviews a trial court's ruling on a motion to dismiss under an abuse of discretion and manifest error standard of review."); *Slaughter v. Board of Sup'rs of Southern University and Agr. And Mechanical College*, 2010-1114, p. 6 (La. App. 1 Cir. 08/02/11), 76 So. 3d 465, 469-70 ("A trial court's determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. Once the trial court finds a violation of La. C.C.P. art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the abuse of discretion standard."); *see also*, *Keaty v. Raspanti*, 2003-1080, p. 5 (La. App. 4 Cir. 02/04/04), 866 So. 2d 1045, 1050.

Mr. Chavez contends that the cases cited by Metso are factually distinguishable from his conduct in this matter. He asserts that his conduct does not rise to the level of offending the integrity of the judicial process. On that point, Mr. Chavez contrasts his actions with that in *Zocaras*, *Dotson*, and *Rodriguez*, where the deceptive practices included not only the initial pleadings, but also discovery requests, discovery answers, and/or depositions. Mr. Chavez asserts that he has never misrepresented his birth name under oath in written discovery or in a deposition. Mr. Chavez contends he rectified his "mistake" voluntarily, well before the matter could proceed to trial and that this "was certainly not a situation of [petitioner] only 'coming clean' after having been 'caught' in his alias." He asserts Metso has shown no prejudice and no adverse effects due to the mistaken identity.

Mr. Chavez also cites federal courts that reached conclusions opposite to that of *Zocaras* and *Dotson*: *Miller v. Hoffman*, 1999 WL 415397 (E.D. Pa. June 22, 1999), *aff'd*, 225 F. 3d 649 (3d Cir. 2000); *Rodriguez v. City of Highland Park*, 2002 WL 31557628 (N.D. Ill. Nov. 15, 2002); and *Sanchez v. Litzenberger*, No. 09 CIV. 7207 THK, 2011 WL 672413 (S.D.N.Y. Feb. 24, 2011). Mr. Chavez contends these cases show that federal courts regularly find that filing under a false name is not so

14

harmful to the integrity of the judicial process that dismissal is warranted. We find these cases distinguishable.

*Miller* involved a request to dismiss a suit filed by a "James Miller" even though the party conceded that his birth name was "Timothy Miller." The court explained that no fraud was committed:

> In the present matter, no evidence suggests that Miller intended to commit fraud on the Court or on anyone else. Miller volunteered the information during his deposition that the first name given to him at birth was "Timothy" and not James. Moreover, Hoffman does not refute that every record pertaining to him bears the name James Miller and the prisoner number BD–4691. Indeed, prison regulations provide that while incarcerated, prisoners must respond to the name under which the prisoner was convicted. *See* K.A.R. 44–12–506; *Kirwan v. Larned Mental Hlth*, 816 F.Supp. 672, 673 (D.Kan. Mar.19, 1993). Thus, the Court finds that Miller's use of the name "James Miller" does not constitute fraud, and dismissal of this action is not warranted on that basis.

*Miller*, 1999 WL 415397, at *10. Unlike in *Miller*, Mr. Chavez had no comparable justification for filing under a false name.

In *City of Highland Park*, the court similarly considered a defendant's argument that an action should be dismissed because the use of a fictious name was a fraud against the court. However, that matter, too, is distinguishable. The deceiving party did not delay or refuse to answer discovery as to his true identity, the fictious name was quickly disclosed in interrogatories only nine months after suit was filed, and the prejudice to defendants was limited because, through open and transparent answers to discovery, defendants were able to "assemble[] a detailed timeline of Plaintiff's earlier attempts to confuse the authorities by using various other names and aliases." *City of Highland Park*, 2002 WL 31557628, at *5. The court also observed that "[d]efendants [] received documentation concerning Plaintiff's use of various names with the authorities, and they were able to question him thoroughly on this issue in his deposition." *Id*.

15

Finally, *Sanchez* is distinguishable because the plaintiff's true identity was disclosed less than a year and a half after the initial filing, the name of the party was found to have no impact on the substance of the lawsuit itself, and the evidence showed that no ulterior motive was found for the deceptions of the court and opposing parties. In contrast, the disclosure of Mr. Chavez's true identity took drastically longer, over three years, and it involves an allegation that was indeed central to at least one cause of action, namely, his suit on behalf of his minor children.

We further note that *City of Highland Park* and *Sanchez* both involve the questionable practice of using the oxymoron, "true alias." In considering a "true alias," the courts noted that a mitigating factor in favor of the deceiving party is the fact that the party used an alias for a lengthy period prior to filing suit and did not specifically invoke an alias purely for the filing of the suit. We are neither bound by the federal district and appellate courts, nor has this Court recognized a "true alias" as either an excuse or mitigating factor for the filing of suit under a false name. We decline herein to adopt such a principle. Doing so would validate the practice of a party's deceiving a court and opposing parties simply because he has a prior, lengthy history of deception in using that "true alias."[11] Additionally, in arguing for the inclusion of a "true alias" as a mitigating factor, Mr. Chavez undermines his argument that this Court cannot consider or look to any of his conduct committed prior to his filing suit. However, if we were to adopt Mr. Chavez's rationale, in order to consider the efficacy of the "true alias" argument, we would need to necessarily consider Mr. Chavez's prior conduct.[12]

---

[11] This line of argument calls to mind the answer given by Paul to his own rhetorical question: "Shall we continue in sin that grace may abound? God Forbid." Romans 6:1-4.

[12] We further note the contradiction in terms of "true alias." Alias is derived from the Latin phrase "alias dictus." "Alias dictus" means "otherwise called." *Alias Dictus*, Black's Law Dictionary (12th ed. 2024). "True" is defined by Black's Law Dictionary as "conformable to fact; correct; exact; actual; genuine; honest." *True*, Black's Law Dictionary (5th Ed. 1979). It is hard to reconcile that "alias" or "otherwise called" can be linked together with "correct," "exact," and "honest," much less, to apply the term to the specific facts of this case. "Sergio Balboa" is not some mere "nickname," "pen name," or pseudonym of Mr. Chavez; it is the actual identity of another person

16

We find the conduct of Mr. Chavez involved a lengthy deception committed against the Louisiana district court, a federal district court, all parties involved in this matter, and the country itself. Indeed, Mr. Chavez's conduct was an ongoing, protracted deception lasting over a three-and-a-half-year long period. Additionally, we find that Mr. Chavez's conduct was no mere mistake, but instead, it was a calculated deception and strategic in nature. It is undisputed that his use of another person's identity and social security information for any purpose is unlawful. His actions were, thus, part of an ongoing pattern of criminal activity designed to accomplish a specific purpose.

In deciding this matter, we are not required to consider Mr. Chavez's conduct prior to filing suit, including his use of a false name and social security number to obtain employment and remain in this country unlawfully.[13] We simply note that his prior conduct clearly shows that his use of the false identity of "Sergio Balboa" in his pleadings was no mere mistake. His actions portray a pattern of deliberate and calculated conduct. The record supports this finding.

---

who has a valid social security number and is a citizen of the United States. This is made clear by the admission of Mr. Chavez's counsel during the hearing on Metso's motion to dismiss that Mr. Chavez "paid somebody for an ID and a social [security] number."

[13] Titled "Fraud and misuse of visas, permits, and other documents," 18 U.S.C.A. § 1546(b) provides:

> (b) Whoever uses—
>
>> (1) an identification document, knowing (or having reason to know) that the document was not issued lawfully for the use of the possessor,
>>
>> (2) an identification document knowing (or having reason to know) that the document is false, or
>>
>> (3) a false attestation,
>
> for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act, shall be fined under this title, imprisoned not more than 5 years, or both.

Section 274A(b) is a reference to 8 U.S.C.A. § 1324(a) which makes employment of unauthorized aliens unlawful.

Mr. Chavez clearly and knowingly filed a petition under a false name in which he invoked the false name twenty-three times. Mr. Chavez falsely alleged in his petition that on the date of the incident that injured him, he was "lawfully" on the premises of Southern Recycling. Although Mr. Chavez may have been on the premises with Southern Recycling's permission, we now know that Mr. Chavez was not in the Unites States legally, a fact well known to Mr. Chavez at the time he filed his pleadings.[14] The petition was signed by attorneys for Mr. Chavez who held themselves out to be "Attorneys for Petitioner, Sergio Balboa."

In asserting his false identity in his petition, Mr. Chavez induced the reliance of both the intervenors and Metso to likewise refer to him as "Sergio Balboa" in their respective pleadings. Mr. Chavez did nothing at that time to correct the record or stop the perpetuation of his false identity.

Thereafter, Mr. Chavez's deception was inflicted upon the federal court, which, in its order remanding the matter to state court, also identified the petitioner as "Sergio Balboa." It is undisputed that at all times this matter was pending in federal court, Mr. Chavez and his attorneys held his identity out to be "Sergio Balboa." We also note that while the matter was pending in federal court, Metso filed exceptions, defenses, and an answer, notably questioning and excepting to "Sergio Balboa's" allegation that he was the father of the minor children. A chief argument made by Metso was that the petition lacked a prima facie showing that the

---

[14] Titled, "Improper entry by alien," 8 U.S.C.A. § 1325(a) provides:

> Improper time or place; avoidance of examination or inspection; misrepresentation and concealment of facts
>
> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

minor children were related to, or in fact, the children of "Sergio Balboa." Metso seemed to have implied, if not outright recognized, that the minor children did not have the same last name as "Sergio Balboa." Metso thus challenged whether "Sergio Balboa" was the biological father of the minor children.

On remand to the state court, Mr. Chavez continued to use the false identity of "Sergio Balboa" three more times in his answer to the intervention. Nearly three and half years after his original petition, Mr. Chavez, for the first time, acknowledged his deception to the court and opposing parties. This was clearly a strategic move; Mr. Chavez had no choice but to confess his true identity. Certainly, only by acknowledging his true identity could Mr. Chavez then prove that he was in fact the father whose name appears on the children's birth certificates.

Mr. Chavez's assertion that he simply made a mistake, and that he voluntary acknowledged his true identity, lacks merit. The record supports a finding that only after he realized that his false identity would thwart his ability to seek damages on behalf of his minor children did Mr. Chavez then correct the record as to his true name and identity. Mr. Chavez did not, as he contends, correct his identity in the court record simply to "come clean." To the contrary, Mr. Chavez was essentially forced to admit his true identity when confronted by exceptions, pleadings, and discovery filed by Metso.

Furthermore, in briefs to this Court, counsel for Mr. Chavez admitted that after "METSO improperly removed the state case to federal court, …, [petitioner] had to be careful of filing any pleadings or engaging in any discovery lest he subject himself to the jurisdiction of the federal forum." We read that admission in Mr. Chavez's brief as an acknowledgement that, at least at the time this matter was removed to federal court, Mr. Chavez purposefully continued his deception as "Sergio Balboa" as a strategic decision to avoid any adverse rulings that may have subjected him to another forum or venue. Furthermore, counsel for Mr. Chavez admits that

19

"[a]lthough METSO propounded discovery while the matter was pending in the federal forum, [petitioner] did not respond during the federal pendency, and did not respond to discovery in the state action until after he had submitted his amended petition disclosing his birth name." It is clear Mr. Chavez strategically deceived both the state and federal trial courts and purposefully delayed discovery, prolonging the matter in order to obtain more advantageous dispositions, or, at the least, to prevent dispositions detrimental to his case.

Mr. Chavez's conduct is sufficiently harmful to the integrity of the judicial process that dismissal of his action with prejudice is warranted. The trial court considered the fact that credibility would be decided by a jury, and, found it would be inequitable to dismiss the matter given the seriousness of the alleged injuries and the payments of benefits already made by the intervening parties. However, this reasoning ignores that the focus, as with forgery in the criminal context, is not on the severity of the offense but on a party's conduct and the resulting impairment of justice. In many cases, the harm inflicted is not limited to pecuniary damages suffered and the injuries may not be to a discrete victim, but to society at large. As the *Dotson* court found, our ruling will "deter those who might be tempted to such conduct in the absence of such a deterrent." *Dotson*, 321 F. 3d at 667. We therefore find the trial court manifestly erred in not finding fraud or willful deception "at this juncture," as the record is replete with evidence of both. We further find that the trial court abused its discretion in denying Metso's motion to dismiss Mr. Chavez's petition. In considering Mr. Chavez's conduct, we agree with *Zocaras*, as did the Fourth Circuit in *Rodriguez*, that "[a] trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name. We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity. .

20

. ." *Rodriguez*, p. 4, 985 So. 2d at 308 (quoting *Zocaras*, 465 F. 3d at 484-85.). We additionally find compelling the following reasoning in *Zocaras*:

> Nothing short of putting the plaintiff out of court will properly punish his serious and protracted violation of the rules and adequately deter future violations by other parties. … Permitting the plaintiff to pursue his claim would take the punch out of the punishment for pummeling the probity of the judicial system.
>
> … The misconduct harmed the judicial system and it also harmed the defendants. It resulted in them proceeding through the litigation for two years without knowing the true identity of the person who was demanding that the court declare they had violated his constitutional rights and force them to pay him damages.

*Zocaras*, 465 F.3d at 484.

Dismissal with prejudice is not without precedent in our legal system and, in fact, is routinely the consequence for conduct far less offensive than that of Mr. Chavez. A party's action may be dismissed, for example, for the failure to timely file within the applicable prescriptive period, or for the failure to take a step within a three-year abandonment period. Although these two examples are distinguishable as legislatively mandated tolling periods, they underscore that dismissal is warranted for the conduct of a party or his counsel that is far less egregious than that of Mr. Chavez's in this matter. Furthermore, liberative prescription and abandonment typically occur without a party's deception, which certainly is not the case in this matter. Considering this, one must then ask: what penalty will sufficiently deter future conduct such as that inflicted upon the judicial system by Mr. Chavez? We find dismissal with prejudice to be the only answer.

We find no merit to Mr. Chavez's argument that dismissal of his petition may infringe upon his due process and equal protection rights, or that dismissal without any express legislative authority unconstitutionally denies him access to the courts. He had access to our courts; he abused that privilege.

For the foregoing reasons, we reverse the lower courts and grant Metso's motion to dismiss Mr. Chavez's petition with prejudice.

21

INTERVENORS' PETITION OF INTERVENTION

As noted, the intervenors opposed Metso's motion to dismiss. In their joint brief, they argued that Metso mischaracterized its motion to dismiss, contending that the motion only sought to dismiss the petitioner's suit, not their Petition of Intervention. Additionally, the intervenors assert they have an independent right to indemnification, are not subrogated to the petitioner's rights, and that dismissal of their intervention is not properly before this Court.

Metso maintains that its motion to dismiss clearly sought dismissal of all pending actions against it. Metso further contends the intervenors, as the employers, are subrogated to the rights of the employee and do not have an independent action against an alleged third-party tortfeasor. Additionally, Metso argues the intervenors have raised this issue for the first time on appeal and that courts of appeal do not consider issues raised for the first time.

In reviewing the record, we find that Metso's motion to dismiss before the trial court did indeed only seek dismissal of the petitioner's suit.[15] The issue of whether the intervenors' petition of intervention survives the dismissal of the underlying injured employee's suit has not been considered by the lower courts in this matter. "The general rule is that appellate courts will not consider issues raised for the first time on appeal." *Segura v. Frank*, 630 So. 2d 714, 725 (La. 1994); *see also*, *Council of City of New Orleans v. Washington*, 2009-1067, p. 3 (La. 05/29/09), 9 So. 3d 854, 856 ("The well-settled jurisprudence of this court establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not

---

[15] On January 26, 2023, Metso filed its motion to dismiss seeking the following:

> Defendant Metso Minerals Industries, Inc., moves for an order dismissing Plaintiff's Petition with prejudice, because Plaintiff has abused the judicial process by filing suit under a false identity and refusing to answer discovery relating to Plaintiff's identity and fraudulent conduct.

addressed."). We therefore remand to the trial court to consider whether the intervenors' petition survives the dismissal of Mr. Chavez's petition.

## CONCLUSION

Based on the foregoing, the trial court's judgment denying the defendant's motion to dismiss is reversed. The motion to dismiss is granted with prejudice, dismissing the petitioner's causes of action. This matter is remanded for further proceedings.

**REVERSED; MOTION TO DISMISS GRANTED WITH PREJUDICE; REMANDED**

# SUPREME COURT OF LOUISIANA

### No. 2023-CC-01029

### RAFAEL ANTONIO MENA CHAVEZ A/K/A SERGIO BALBOA, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, INGRID MENA PEREZ AND KELVIN PEREZ AND PLAINTIFF-INTERVENORS EMR (USA HOLDINGS), INC., AND SOUTHERN RECYCLING, LLC

### VS.

### METSO MINERALS INDUSTRIES, INC. N/K/A METSO OUTOTECH USA, INC. AND ABC INSURANCE COMPANY

*On Supervisory Writ to the Orleans Civil District Court, Parish of Orleans Civil*

**WEIMER, C.J.**, dissenting.

Generally, courts consider the fate of only a few saints, but a fair number of sinners. An old adage states that there are "no saints without a past, or sinners without a future."[1] While there is certainly no place whatsoever in our system of justice for lies, falsehoods, or deception, there must also be a place for belief in redemption. The virtue of tolerance cannot fail to take into account human frailties, and when dispensing justice, courts should ensure that the punishment appropriately fits the crime rather than impose a sentence or penalty that is draconian.[2] If those appearing before courts were perfect people, the work of the courts would be lessened substantially.

---

[1]  Variously attributed to Saint Augustine, Oscar Wilde, and 1 Corinthians 6:11.

[2]  The iconic program *Saturday Night Live* recently celebrated its 50th Anniversary. A skit from the late 1970s–"Theodoric of York, Medieval Judge"–featured actor and comedian Steve Martin. In the skit, Theodoric would summarily impose medieval punishments on criminals after briefly consulting a book called "The Writ of Common Wisdom." For example, a multiple offender, played by the late actor and comedian John Belushi, was previously found guilty of theft and had his arm cut off. Later, when found guilty of lying, he had his tongue removed. Social commentary came at the conclusion of the skit with Theodoric reflecting on modern legal concepts practiced in this country, such as trial by a jury of one's peers, providing defense counsel, presumption of innocence until proven guilty beyond a reasonable doubt, and prohibition of cruel and unusual punishments, but then ends with Theodoric saying "Naaaaaaaahhhh!" Like Theodoric of York, the majority chooses a more draconian remedy rather than one balanced or tempered in favor of a more enlightened and equitable result.

I, like my colleagues in the majority, cannot tolerate lies, falsehoods or deceptions, but believe firmly that other options exist short of dismissing this case. Indeed, the jury, consisting of a cross section of the community, may well decide the plaintiff's fate in such a way that moots the court's intervention. Although this court may have the inherent authority to dismiss a matter, I would not do so in this case based on this record. The day may come to dismiss a case, but that day has not yet arrived.

While dismissing Mr. Chavez's suit due to his use of a true alias[3] has a simplistic surface appeal, such action actually diminishes the integrity of our judicial process by rewarding a potentially negligent tortfeasor, overly sanctioning an injured party, and shifting the financial responsibility to taxpayers. Finding this court should, instead, resolve this case with a balanced approach, requiring consideration of the particular facts of each case, I respectfully dissent.

"*Culpae poenae par esto*," Latin for the maxim "the punishment must fit the crime," is equally fitting in this civil context. As retributive justice requires that the criminal offender receive punishment proportional or similar to the crime, the plaintiff here should not face the draconian "death penalty" of dismissal of his suit, particularly when the purported fraud of using a true alias was unrelated to the accident. As a society we recognize that the death penalty is not appropriate for each offense. Likewise, the most severe penalty of dismissal is not appropriate in each case. Imposing a lesser sanction that fits the offense does not reward the plaintiff. The plaintiff must still face the consequences of his deception at trial where the

---

[3]  I do not view "true alias" as a contradiction in terms or oxymoron. Rather, I view the term as a term of art in an evolving legal setting, much like "jumbo shrimp" is a term of art within the seafood industry. Further, a colloquial phrase grades untrue statements as "lies, damned lies, and statistics," variously attributed to Mark Twain or Benjamin Disraeli, among others.

defendant will presumably be allowed to introduce the use of an alias to assert plaintiff's lack of veracity relating to the facts of the accident and the extent of injuries.

There is a long held belief in tort law that if the defendant is indeed legally at fault for causing injuries to the plaintiff, the defendant must respond by paying damages to make the plaintiff whole. See La. C.C. art. 2315,[4] which dates back over 200 years in the Louisiana Civil Law System. Not only will application of the majority opinion's rule of dismissal allow negligent defendants to avoid liability, it will also eliminate any financial incentive under our tort law to ensure safety. See **Bozeman v. State**, 03-1016, p. 12 (La. 7/2/04), 879 So.2d 692, 700; **Thomassie v. Amedisys La Aquisitions, LLC**, 20-01229, pp. 1-2 (La. 1/20/21), 308 So.3d 1165, 1165 (tort damages can help to deter unreasonably dangerous conduct). Deterrence is one of the complex of purposes that is said to lie at the heart of all tort law. See **Creech v. Aetna Cas. & Sur. Co.**, 516 So.2d 1168, 1173 (La.App. 2d Cir. 1987); **Fagot v. Ciravola**, 445 F.Supp. 342, 345 (E.D. La. 1978). The good citizens of Louisiana would not allow an injured individual to anguish in pain without medical care. Thus, the costs of a negligent defendant's actions will shift to the welfare system and taxpayers–hardly an appropriate, just, or fair result.

Immigration policies have become like so many issues–political. But it remains that the United States is historically a country of primarily immigrants. Although undocumented, this particular individual was apparently gainfully employed and was injured while working, most likely in a job no one else wanted. No court has yet reached the merits of plaintiff's case, but it is clear that he sustained

---

[4] La. C.C. art. 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

severe injuries and the worker's compensation carrier has paid approximately half a million dollars in medical expenses and benefits alone. The result of the majority opinion is to give negligent defendants a windfall in every case where an undocumented worker uses a false identification simply to obtain a job no one else would take because the work is hard and dangerous, but taken to feed and care for his family. Such a result does not enhance or protect the integrity of the judiciary when imposed without statutory authority. Dismissing plaintiff's suit provides the defendant a windfall even when the purported fraud was unrelated to the accident, and has not prejudiced the defendant. Courts must indeed preserve the integrity of the judicial process, but this is accomplished by imposing a sanction that fits the offense. Although I recognize courts have inherent authority to dismiss a suit for violation of La. C.C.P. art. 863, courts should only do so in extreme circumstances, after balancing a litigant's constitutional right of access to the courts with the need to protect the integrity of the judicial system, and considering the relevancy and harm caused by the litigant's deception in the particular litigation. The result reached by the majority fails to follow such a balanced approach, and effectively absolves the defendant of its potential liability and unduly sanctions the plaintiff, while passing the obligation to care for the injured person to the taxpaying public–a far cry from restoring integrity to our judicial system.

Although I find dismissal inappropriate based on the facts of this particular case, I would remand this case to the district court for a determination and imposition of a sanction pursuant to La. C.C.P. art. 863(D), which mandates that a court impose appropriate sanctions upon a determination that a certification has been made in violation of this Article.

4

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01029

## RAFAEL ANTONIO MENA CHAVEZ A/K/A SERGIO BALBOA, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, INGRID MENA PEREZ AND KELVIN PEREZ AND PLAINTIFF-INTERVENORS EMR (USA HOLDINGS), INC., AND SOUTHERN RECYCLING, LLC

## VS.

## METSO MINERALS INDUSTRIES, INC. N/K/A METSO OUTOTECH USA, INC. AND ABC INSURANCE COMPANY

On Supervisory Writ to the Orleans Civil District Court, Parish of Orleans Civil

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the majority in all respects. I write separately to highlight that this case raises a concern for attorneys handling similar matters. As the majority notes, the Code of Civil Procedure contemplates truthfulness in all proceedings. Notably, the Code places an affirmative duty upon a lawyer, set forth in article 863: "[T]he signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after ***reasonable inquiry***, he certifies [that] (2) [e]ach allegation or other factual assertion in the pleading has evidentiary support. . . ." La. Code Civ. P. art. 863(B)(2) (emphasis added). When confronted with facts similar to those presented here, I urge lawyers to make a reasonable inquiry into their client's identity and status. *See also* La. R. Prof. Conduct 3.3(a) ("A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . . ; (3) offer evidence that the lawyer knows to be false."); La. Lawyer's Oath (in which a lawyer vows that he will proceed with "truth and honor" and "will never seek to mislead the judge or jury by an artifice").

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01029

### RAFAEL ANTONIO MENA CHAVEZ A/K/A SERGIO BALBOA, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILDREN, INGRID MENA PEREZ AND KELVIN PEREZ AND PLAINTIFF-INTERVENORS EMR (USA HOLDINGS), INC., AND SOUTHERN RECYCLING, LLC

### VS.

### METSO MINERALS INDUSTRIES, INC. N/K/A METSO OUTOTECH USA, INC. AND ABC INSURANCE COMPANY

*On Supervisory Writ to the Orleans Civil District Court, Parish of Orleans*

**GRIFFIN, J., dissents for the reasons assigned by Chief Justice Weimer and assigns additional reasons.**

The issue before this Court is whether the trial court abused its discretion in declining to dismiss the litigation for a violation of La. C.C.P. art. 863. As the majority effectively removes any meaningful discretion from lower courts on this issue, I must respectfully dissent.

Nothing in the positive law precludes Mr. Chavez from filing a products liability suit based on his status as an undocumented immigrant. "All courts shall be open, and every *person* shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La. Const. art. I, § 22 (emphasis added). A "claimant" in a products liability action is a "*person* or entity who asserts a claim under [the products liability statute] against the manufacturer of a product or his insurer for damage caused by the product." La. R.S. 9:2800.53(d) (emphasis added). "Conduct or circumstances that result in liability under [the products liability statute] are 'fault' within the meaning of Civil Code Article 2315." La. R.S. 9:2800.52. "Every act whatsoever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315; *see also*

*Martinez v. Dep't of Transp. & Dev.*, 22-0091 (La. 11/1/22), 349 So.3d 14 (McCallum, J., would grant and docket) ("Although no case law in Louisiana directly states that undocumented aliens have a right to pursue claims for personal injury damages, other jurisdictions recognize this right, and I agree that an undocumented person has standing to sue for personal injuries under La. C.C. art. 2315."). Mr. Chavez's right to bring suit is therefore both constitutionally and statutorily protected.[1]

A violation of La. C.C.P. art. 863 requires a court shall impose "an appropriate sanction which may include an order to pay the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees." La. C.C.P. art. 863(D). I agree with the majority that, among such appropriate sanctions, courts have the inherent authority to dismiss an action. *See* La. C.C.P. arts. 191 and 1631(A); *In re Milkovich*, 493 So.2d 1186, 1188 (La. 1986) ("power to punish contemptuous conduct is essential to the fair and efficient administration of justice and to the preservation of the dignity and authority of the courts"). The breadth of this authority, however, is tempered by considerations of additional provisions of the positive law.

Article 863 derives from FRCP Rule 11 subject to one critical distinction: there is no analog in the Louisiana Code of Civil Procedure to FRCP Rule 41(b) which expressly establishes the sanction of involuntary dismissal for failure to comply with *any* of the Federal Rules of Civil Procedure.[2] Buttressing this

---

[1] An interpretation to the contrary would "condone the 'treat[ment of] illegal aliens as disposable commodities [that] may be replaced the moment they are damaged.'" *Rodriguez v. Bollinger Gulf Repair*, 07-1476 (La.App. 4 Cir. 5/21/08), 985 So.2d 305, 308 (Belsome, J., dissenting) (quoting *Rosa v. Partners in Progress, Inc.*, 152 N.H. 6, 868 A.2d 994, 1000 (2005)).

[2] The absence of a "catch-all" provision for dismissal in the Louisiana Code of Civil Procedure reveals a degree of merit to Mr. Chavez's argument that Metso effectively seeks a motion for contempt under La. C.C.P. art. 224(4). Dismissal for constructive contempt is not a punishment enumerated in the positive law. *See* La. Const. art. V, § 2 ("The power to punish for contempt of court shall be limited by law."); La. C.C.P. art. 227 ("A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law. The punishment which a court may impose upon a person adjudged guilty of contempt of

distinction is the legislature's provision for a sanction of dismissal for a party's failure to comply with a discovery order mirroring its federal counterpart. *See* La. C.C.P. art. 1471(A)(3) (court may issue order "dismissing the action or proceeding or any part thereof") and FRCP Rule 37(b)(2)(A)(v) (court may issue an order "dismissing the action or proceeding in whole or in part"). This distinction is indicative of a policy decision to only provide for the sanction of dismissal in specific instances that do not expressly include violations of La. C.C.P. art. 863. *See Carter v. Duhe*, 05-0390, p. 10 (La. 1/19/06), 921 So.2d 963, 970 ("it is not the function of the judicial branch in a civilian legal system to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so"); *Broussard v. Blount*, 20-0544, p. 4, (La. App. Cir. 5/5/21), 319 So.3d 389 ("the Louisiana Code of Civil Procedure does not recognize a motion to dismiss as a proper procedural vehicle for a litigant to obtain the dismissal of an opposing party's claims"). Even in the context of failure to comply with court ordered discovery, dismissal is a "draconian penalty which should be applied only in extreme circumstances." *Hutchinson v. Westport Ins. Corp.*, 04-1592, p. 2 (La. 11/8/04), 886 So.2d 438, 440 (citing *Horton v. McCary*, 93-2315, p. 10 (La. 4/11/94), 635 So.2d 199, 203). I therefore agree with the trial court's observation that "it is incumbent upon the court to weigh and balance the interest involved" such that "the cause of action will be determinative of the outcome of the case."

In exercising the inherent authority to dismiss for violation of La. C.C.P. art. 863, a litigant's constitutional right of access to the courts should be balanced against the integrity of the judicial system as informed by the relevancy of a litigant's deception to their cause of action.[3] *See Sanchez v. Litzenberger*, 2011 WL 672413,

---

court is provided in R.S. 13:4611."); La. R.S. 13:4611(D)(i) (punishment for any other contempt of court not specifically enumerated shall be fined no more than five hundred dollars, or imprisonment for not more than three months, or both).

[3] Instances where a litigant's identity relates to their cause of action appear rare:

at *7 (S.D.N.Y. 2011) (dismissal not appropriate sanction particularly where "[p]laintiff's misrepresentation related to a matter beyond the substantive issues directly before the Court"); *Skywark v. Isaacson*, 1999 WL 1489038, at *15 n. 28 (S.D.N.Y. 1999) (observing cases from federal circuits have "emphasized the centrality of the misconduct to the matters in controversy as an important factor in the decision to dismiss") (citing *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) and *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 n. 3 (1st Cir. 1989)). Additional interrelated factors to consider include whether a litigant's deception reflects a pattern of bad faith conduct; the extent of prejudice to the opposing party and harm to the system of justice; and the utility of lesser sanctions in deterring future deception in the proceedings. *See Sanchez*, 2011 WL 672413, at *4 (citations omitted); *Hutchinson*, 04-1592, p. 3, 886 So.2d at 440 (enumerating similar factors in the context of discovery sanctions). Federal courts have emphasized the significance and motivation of a plaintiff's use of a "true alias"[4] in relation to these factors. *See Sanchez*, 2011 WL 672413, at *6 (plaintiff adopted and used "true alias" for a period of ten years prior to events giving rise to lawsuit and not for "a deliberate scheme to defraud both the defense and the Court"); *Rodriguez v. City of Highland Park*, 2002 WL 31557628, at *4 (N.D. Ill. 2002) (plaintiff's use of "true alias" used in connection with seeking employment and not invented solely

---

[T]he improper use of an alias in this case related to an issue that was relevant, namely Plaintiff's gender. Mr. Duffer could not assert a claim for loss of consortium if Plaintiff was not his legal spouse. Consequently, the use of a female identity was false and material to issues presented in the case.

*Duffer v. Keystops, LLC*, 2012 WL 3104903, at *6 (Tenn.Ct.App. 2012) (internal citations omitted) (decided prior to *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584 (2015)).

[4] A "true alias" is one that is not exclusively used for the purpose of filing a suit. *See City of Highland Park*, 2002 WL 31557628, at *4 (plaintiff's name qualified as "true alias" as defendants conceded it had been used in connection with seeking employment and not invented solely for the purpose of deceiving the police or courts); *Dotson v. Bravo*, 202 F.R.D. 559, 562 (N.D. Ill. 2001) (plaintiff's name not an alias because it was not used for any other purpose outside of filing the present lawsuit).

4

for the purpose of deceiving the police or courts); *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003) (plaintiff engaged in a continuing scheme of deception in concealing his identity through multiple state criminal trials and pursuing federal civil rights action against police); *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (plaintiff "followed a pattern of deception" of at least six years from obtaining a driver's license "through multiple arrests, convictions, and incarcerations"). Under the foregoing framework, dismissal of this suit is not warranted.

Mr. Chavez's misconduct includes filing a petition under the "true alias" of "Sergio Balboa, Jr." and continuing under that alias for three and a half years while his case was removed and remanded from federal court. Mr. Chavez's alias was used to secure employment and not solely manufactured to perpetuate fraud on the court. *Compare Sanchez*, 2011 WL 672413, at *6 *with Dotson*, 321 F.3d at 668. Such deception does not directly relate to the substantive issue before the court – Metso's alleged liability for injuries sustained by Mr. Chavez during a workplace accident. Metso's reliance on *Rodriguez*, *Dotson* and *Zocaras* is inapposite as those cases involved deception in the discovery process. *See Aguilar v. United Floor Crew, Inc.*, 2015 WL 2415421, at *13 (S.D. Fla. 2015) ("The price paid for misinforming opposing parties and the Court through pleadings and discovery stages would be … the gift [to plaintiff] of entering a deposition armed with the knowledge of defendants' litigation strategy."). There has been no showing that Mr. Chavez gave false answers to discovery at this stage of the proceedings. Thus, the extent of any prejudice to Metso is ameliorated by Mr. Chavez revealing his identity prior to formally responding to discovery. I would therefore find that the trial court did not abuse its discretion in denying Metso's motion to dismiss.